## ROBERT I. HUNT *et al.*

*v.*

## CHARLES E. SMITH.

*Filed at Ottawa October 31, 1891.*

1. CONTRACT—*failure to perform—right to rescind—mutuality.* A contract for the sale of city lots provided that in case the title, on examination, should be found defective, then, unless the material defects should be cured in sixty days after written notice thereof, earnest money which had been paid should be returned and the contract become inoperative; and also, that if the purchaser should fail to perform the contract promptly, at the time and in the manner specified, the earnest money paid should, at the option of the vendor, be forfeited as liquidated damages, and the contract should become void: *Held,* that the failure of either party gave the other the right to rescind, but not for his own failure to perform the contract.

2. In such case, the failure of the vendor to remove defects in the title within the time limited gave the vendee the right to rescind, if he so elected, but did not authorize the vendor to declare a rescission, and thus free himself of his obligation to sell and convey a good title. The vendee might still insist upon a specific performance of the contract.

3. SPECIFIC PERFORMANCE—*contract to convey good title—rights of purchaser.* Where a party agrees to convey to another a good title to land, he agrees to convey an unincumbered title; and a decree for the specific performance of the contract is not open to the charge of making and enforcing a new and different contract than that of the parties, because it requires the vendor to remove an incumbrance on the land, and on his failure to do so allows the purchaser to lift the same out of the purchase money.

4. SAME—*contract to convey—of decree authorizing vendee to remove incumbrances.* On bill for the specific performance of a contract for

the sale and conveyance of a good title to land, which was subject to a mortgage for the payment of money, the court, among other things, required the vendor and his grantee with notice to make and file with the clerk of the court a warranty deed by a time fixed, conveying a clear title, and provided that if the vendor failed to have such mortgage released, the vendee might procure the same, and that the amount paid for that purpose should be deducted from the purchase money, and reserved the power to investigate the questions of the amount the vendee was compelled to pay for such release: *Held*, that there was no error in the decree.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. HOWARD HARE, and Mr. C. C. BONNEY, for the appellants:

The decree should be reversed because the contract, so far as a conveyance of the land was concerned, was completely determined and at an end when the title was examined and found not good.

The decree should be reversed for the reason that it is in no sense a decree for specific performance, but makes a new contract, and orders the doing of acts not contemplated by the parties. *Lombard* v. *Sinai Congregation,* 75 Ill. 271; *Hamilton* v. *Harvey,* 121 id. 469.

The decree should be reversed because it is manifestly harsh and contrary to equity. *Love* v. *Cobb,* 63 N. C. 324; *Tamm* v. *Lavalle,* 92 Ill. 263; *Railroad Co.* v. *Reno,* 113 id. 39; *Hetfield* v. *Willey,* 105 id. 286.

Mr. J. J. PARKER, for the appellee:

When a contract contains mutual and dependent stipulations, one party in default can not default the other. *Crabtree* v. *Levings,* 53 Ill. 256; *Mix* v. *Beach,* 65 id. 311; Pomeroy on Specific Per. sec. 361, note.

Where concurrent acts are to be performed, there can be no forfeiture by the vendor, even if time is made of the essence, unless he is able, ready and offers to perform. *Bishop* v. *New-*

*ton,* 20 Ill. 178; *Brown* v. *Carmon,* 5 Ga. 174; *Baker* v. *Bishop Hill Colony,* 45 Ill. 270.

It is enough if he be, on reasonable notice, ready and willing to pay. *Freeson* v. *Bissell,* 63 N. Y. 168; *Irvin* v. *Gregory,* 13 Gray, 215; Pomeroy's Eq. sec. 1407.

Offer to pay is enough. *Mathison* v. *Wilson,* 87 Ill. 51; *Thayer* v. *Meeker,* 86 id. 471.

Refusal to convey on other grounds waives a formal tender. *Thayer* v. *Meeker,* 86 Ill. 471.

Forfeitures are odious. *Heald* v. *Wright,* 75 Ill. 17; *Insurance Co.* v. *Walsh,* 54 id. 164; *Palmer* v. *Ford,* 70 id. 377.

The court had power to grant to the appellee specific performance, with conditions as decreed in the case.

·A vendor of land who can not convey title to the extent of his contract may be required to do so to the extent of his ability, and make compensation for the deficiency. *Woodman* v. *Freeman,* 25 Me. 544, and authorities cited; *Harding* v. *Parshall,* 56 Ill. 219; Fry on Specific Per. (3d ed.) secs. 1223, (note 1,) 1224, 1227-1229, 1231; *Waters* v. *Travis,* 9 Johns. 451; *Hill* v. *Buckley,* 17 Ves. 394; *Voorhees* v. *DeMayer,* 3 Sanf. Ch. 614; *Napier* v. *Darlington,* 20 P. F. Smith, 64; *King* v. *Ruckman,* 5 C. E. Green, 316; *Marshall* v. *Caldwell,* 41 Cal. 611; *Pigne* v. *Coffin,* 12 Gray, 316; *Gilbert* v. *Peteller,* 38 Barb. 517; *Wright* v. *Young,* 5 Misc. 127; *Zebley* v. *Sears,* 38 Iowa, 507; *Barnes* v. *Wood,* L. R. 8 Eq. 424.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Charles E. Smith against Robert I. Hunt, for a specific performance of a contract for the conveyance by Hunt to Smith of certain lots of land in Chicago. H. W. Fuller was also made a party defendant on the allegation that the legal title of record to said premises was apparently in him, and that he had executed and delivered to his co-defendant a deed thereof which the

latter fraudulently withheld from the record. A supplemental bill was subsequently filed making Augustus Newman a defendant, and alleging that since the filing of the original bill, he had purchased said lots from defendant Hunt, with notice of the complainant's rights. The contract set up by the complainant is as follows :

"This memorandum witnesseth, that Robert I. Hunt hereby agrees to sell, and Charles E. Smith agrees to purchase, at the price of $8500, the following described real estate, situate in Cook county, Illinois : Lots 5 and 6, in block 2, in Hardin's subdivision, etc., (describing said premises). Said purchaser has paid $300 as earnest money, to be applied on said purchase when consummated, and agrees to pay, within five days after the title has deen examined and found good, (on or before September 15, 1890,) the further sum of $3000 at the office of Mead & Coe, Chicago, provided a good and sufficient warranty deed conveying to said purchaser a good title to said premises shall then be ready for delivery, the balance to be paid as follows : by three notes of date herewith, each for the sum of $1500, and due respectively in one, two and three years after the date thereof, and one special note of $700 secured by second mortgage on said property, due in six months after the date thereof. All of said notes are to be on or before notes, with interest from the date hereof at the rate of six per cent per annum, payable semi-annually, to be secured by mortgage or trust deed of even date herewith, on said premises, in the form ordinarily used by Mead & Coe. A complete abstract of title, or merchantable copy, to be furnished within a reasonable time, with a continuation thereof brought down to date.

"In case the title, upon examination, is found materially defective, within ten days after said abstract is furnished, then, unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract is to become inoperative. Should

said purchaser fail to perform this contract promptly on his part, at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the vendor, be forfeited as liquidated damages, including commissions on this negotiation, and this contract shall be and become null and void.

"Time of the essence of this contract, and of all the conditions thereof. This contract and the earnest money shall be held by Mead & Coe for the mutual benefit of the parties hereto.

"In testimony whereof said parties hereto set their hands this eighth day of August, 1890.

ROBT. I. HUNT,<br>CHARLES E. SMITH."

The two lots described in said contract were situated on the corner of Calumet avenue and Fiftieth street, Chicago, having a frontage of one hundred feet on said avenue. On production of an abstract of title to said lots, it appeared that they, and the four lots adjoining, embracing in all a frontage of three hundred feet on said avenue, were formerly owned by the Connecticut Mutual Life Insurance Company, and were purchased of that company by defendant Fuller and others, the purchasers executing to said company a "blanket mortgage" for $12,500 covering all of said lots, and that said lots were still subject to said mortgage. The existence of this mortgage does not seem to have been known to either vendor or vendee at the time of the execution of said contract. The evidence tends to show that, by arrangement made by the several purchasers of said lots as between themselves, the burden of said mortgage was to be borne by said lots in the following proportions, viz, $4500 by the two lots in question, $4000 by the two lots next adjoining, and $4000 by the two remaining lots, but the mortgage, so far as the mortgagee was concerned, was a general lien on all the lots for the entire amount secured thereby.

It appears that in the negotiation of said contract, James Linden acted as Smith's agent, or rather, that Linden negotiated the contract in Smith's name for his own benefit, and that in the transaction Smith occupied merely the relation of trustee, Linden being the real purchaser.

On the 15th day of September, 1889, Hunt and Linden met at the office of Mead & Coe for the purpose of performing said contract. Linden, as the evidence tends to show, was then able and ready to pay the purchase money and perform the contract on behalf of the vendee, although no money was produced and no distinct offer of performance made on behalf of the vendee. Hunt produced a draft of a warranty deed, in the statutory form, conveying said lots from him to Smith, in which it was recited, however, that said premises were subject to said mortgage, and that the grantee had assumed and agreed to pay, as part of the consideration of said deed, $4500 of the indebtedness thereby secured, and that said mortgage was excepted from all the covenants in the deed on the part of the grantor. Linden objected to receiving said deed and demanded of Hunt a deed in accordance with the terms of said contract, but Hunt declared that, owing to the existence of said mortgage, he was unable to execute a deed in any other form. It was thereupon proposed by Hunt that the matter be postponed for a week, or until the following Saturday, to which Linden assented, provided a memorandum of such postponement should be endorsed upon the contract. Hunt, acting under the advice of his attorney, declined to add any memorandum to the contract, but the matter seems to have been postponed, by a tacit understanding until the following Saturday, or for an indefinite period, for the purpose of enabling Hunt to make arrangements for freeing said lots from that portion of the burden of said mortgage which should properly rest upon the four other lots. The parties met again on the 6th day of October following, but no change having been accomplished in the lien of said mortgage, Hunt tendered to

Smith the same deed, which was again declined, and this suit was thereupon brought for a specific performance of said contract.

Shortly after said meeting of October 6, Hunt conveyed said lots to Newman, but the evidence is undisputed that Newman took said conveyance with full knowledge of the rights acquired by Smith by virtue of said contract.

At the hearing, which was had on pleadings and proofs, the court found the facts substantially as above stated, and found that the complainant was entitled to a specific performance of said contract. The court further found that Hunt was in duty bound to remove from said lots the lien of said mortgage, and that the complainant was entitled to receive a conveyance of said lots free from the lien thereof; that Newman, at the time of the conveyance to him, had full notice of said contract, and of the rights and equities of the complainant thereunder, and that he therefore had no right to hold the legal title to said lots, as against the complainant, but that by said conveyance, Hunt transferred to Newman all of said Hunt's interest in said contract and in said premises, and that Newman was entitled to receive the proceeds of said contract. It was thereupon ordered and decreed that Hunt execute to the complainant his warranty deed, conveying said lots, and deliver such deed, with an abstract of title, or merchantable copy, to the clerk of said court, on or before February 20, 1891; that Newman execute a deed of conveyance of said premises to the complainant, conveying to him such legal title as he, said Newman, acquired by virtue of said conveyance to him from Hunt, and that he deliver the same to the clerk of said court on or before said February 20; that if said deeds and abstract should be delivered as thus required, the complainant, within one day after February 20, 1891, pay to said clerk $3000, in cash, and execute his four promissory notes for $1500 each, dated August 8, 1890, falling due on or before one, two and three years thereafter, with six per cent interest,

payable semi-annually, together with his mortgage to secure said three notes, and also a second mortgage duly executed and acknowledged, to secure the $700 note on said premises; that the clerk keep said notes and mortgages until said lots are released from the lien of said mortgage to said insurance company; that if the plaintiff is compelled to discharge said lien, then that the sum of money which he is compelled to pay for that purpose be applied in payment and discharge of said four notes in their order of maturity, to the extent of such payment; that if Hunt or Newman discharge said lien, said notes and mortgages be delivered to said Newman; that in the event of an appeal by Hunt or Newman or both of them, the complainant need not pay said sum of $3000, or deliver said notes and mortgages, until the final determination of the case; that in case Hunt and Newman execute said deeds to said clerk, said clerk shall deliver said deeds to the complainant upon payment by him of said $3000, and the delivery of said notes and mortgages, and in that event the clerk pay said $3000 to said Newman, and that he place said mortgages on record when he delivers to the complainant said deeds; that if the defendants should comply with said decree and the complainant neglects to comply on his part, he shall, at the election of the defendants, be held to acquiesce in Hunt's failure to perform said contract, and shall not be entitled to a specific performance, or any damages for non-performance, or, at such election, an execution shall issue against him for said $3000; that defendant Hunt pay the complainant's costs, and that the defendants pay their own costs; and the court, by said decree, reserved for future consideration the matter of ascertaining whether Hunt removes the lien of the insurance company's mortgage, and how much, if anything, the complainant may be compelled to pay to remove the same. From said decree both Hunt and Newman have appealed to this court.

It is claimed by the appellants that, by reason of the inability of Hunt to convey an unincumbered title, the contract,

by its own terms, became inoperative, and therefore no longer binding on either party; and the evidence tends to show that Hunt, acting upon that theory, undertook to declare the contract forfeited, and conveyed said lots to Newman. It is plain that the construction thus sought to be put upon the contract was entirely unwarranted. The contract is an absolute undertaking by Hunt to sell and by Smith to purchase said lots upon the terms stated, Hunt, on his part, to convey a good title. True, a provision is added that, in case the title, upon examination, should be found materially defective, then, unless such defects should be cured within sixty days after written notice thereof, the earnest money should be refunded and the contract should become inoperative. This clearly was a provision inserted for the sole benefit of the purchaser, and one of which he alone could take advantage. It provided for the consequences of a failure of performance by the vendor, and in the nature of things could have been intended only to confer upon the purchaser the right to treat the contract as inoperative. It would be absurd to suppose that the parties intended to make a breach by the vendor of his own undertaking a ground upon which he would have a right to declare the contract void. Such construction would in effect make the performance of the contract a matter dependent upon the mere will or caprice of the vendor, as it would always be within his power, if he should see fit to do so, to tender to the purchaser an imperfect title, and thus avail himself of his option to rescind.

The view we are disposed to take is also supported by reference to the provision of the contract immediately connected and following the one we are now considering. That plainly was inserted for the benefit of the vendor, and is, in substance, that if the purchaser failed to perform on his part, the earnest money paid should, at the option of the vendor, be forfeited, and the contract become null and void. Thus the consequences of a failure to perform by either party were provided

for and declared, by giving to the other party a right to rescind, but it was manifestly not intended that the default of either party should give him a right to treat the contract as no longer binding upon him.

We are of the opinion then that the contract was operative and in full force at the time the bill was filed, and that the court was justified in decreeing a specific performance, unless the circumstances of the case are such as to present some insuperable obstacle to that mode of relief. It is urged that the mode provided by the decree for the extinguishment of the lien of the insurance company's mortgage was not a specific enforcement of the contract as made, but was tantamount to the insertion in the contract and the enforcement of new terms, thus, in effect, creating a new contract for the parties. This we think is a misapprehension. Hunt, by his contract, agreed to convey to Smith a good title, which of course means an unincumbered title, and the decree merely enforces a performance of that agreement.

At the date of the decree the lien of the insurance company's mortgage had not been removed, and the obligation on the part of Hunt to convey an unincumbered title necessarily involved the legal obligation or duty to remove said lien. The decree enforces that duty by giving Hunt, or his grantee Newman, an opportunity to remove said lien of their own accord and upon such terms as they may be able to obtain from the insurance company, and in default of their doing so, the complainant is authorized to satisfy it at their expense, and indemnify himself by applying the amount he is thus compelled to pay in satisfaction of the notes and mortgages given for the purchase money. This is in no sense a creation of a new contract for the parties, but only a mode, and we think an appropriate mode, of enforcing the legal obligations imposed by the contract which the parties have made for themselves.

It is said that the decree is harsh and inequitable because it places no limit upon the sum which the complainant will be

at liberty to pay the insurance company for a release. To this it may be replied that if the appellants are apprehensive that an inordinate sum will be paid by the complainant, they are at liberty, and it is their duty, to negotiate for and obtain a release themselves, and if they fail in their duty in that behalf, we can see no reason why they should complain at such sum as the complainant, in the exercise of good faith, may be compelled to pay to free his lots from the mortgage. The court, by the decree, has reserved to itself the power to investigate the question of the amount the complainant shall be compelled to pay for that purpose, and if an exorbitant or unreasonable sum is paid, or if the complainant shall fail to act in good faith in the matter, the appellants will doubtless be entitled to appropriate relief at the final hearing of the matters thus reserved. But we see nothing in the decree as it now stands which calls for the interposition of this court by way of review.

We are of the opinion that the decree is supported by the evidence, and it will accordingly be affirmed.

*Decree affirmed.*