## THEODORE FORTHMAN

*v.*

## JOSEPH DETERS.

*Opinion filed December 16, 1903.*

1. CONTRACTS—*when contract is not void for want of mutuality.* A contract for the sale of land, signed and sealed by the proposed vendors, which recites that they have "sold" the land described to the proposed vendee, does not lack mutuality, even though not signed by the vendee, where the latter accepted and adopted it.

2. SAME—*one accepting a written contract is bound by its terms.* One accepting and adopting a written contract, even though it is not signed by him, is deemed to have assented to its terms and conditions and is bound by them.

3. SAME—*when contract to convey involves payment of claims against estate.* A contract by the widow and heirs to convey land of the decedent and to give "a good deed free from all encumbrance, with abstract of title up to date," imposes upon the grantors the duty of discharging any liability of the land for the payment of claims against the decedent's estate.

4. SAME—*contract under seal imports consideration.* A contract to convey land, signed and sealed by the proposed vendors and accepted and adopted by the proposed vendee, must be regarded as based upon sufficient consideration.

5. SPECIFIC PERFORMANCE—*complainant must prove willingness to perform.* A complainant in a proceeding for specific performance must prove complete performance on his part or that he was ready and willing to perform.

6. MERGER—*when merger takes place at law.* At law, when a legal and equitable estate coincide in the same person, the equitable estate is immediately merged and annihilated.

7. SAME—*rule as to merger in equity.* Whether a merger takes place in equity depends upon the intention of the parties and the particular circumstances, but equity will not prevent a merger where such prevention would give effect to a fraud or wrong.

8. SAME—*when legal and equitable estate merges in grantee.* If a proposed vendee of encumbered land agrees to pay the mortgage as part of the consideration, his purchase of the notes and mortgage and subsequent acquiring of legal title work a merger.

9. NOTICE—*purchaser with notice is treated as a trustee.* One who purchases property with notice of a prior agreement by the vendors to convey to another person is regarded as the trustee of the latter, and may be decreed to convey the land in the same manner as his vendors.

APPEAL from the Circuit Court of Jasper county; the Hon. WILLIAM M. FARMER, Judge, presiding.

This is a bill, filed on August 14, 1902, in the circuit court of Jasper county by appellee, Deters, against Reka Huckstead, Ferdinand Huckstead, Anna Bartels and appellant, Theodore Forthman, for the specific performance of a contract, made by Reka and Ferdinand Huckstead with the appellee to convey to the latter eighty acres of land, to-wit, the west half of the south-east quarter of section 8, township 7 north range 8 east in said county. The bill not only prayed for a conveyance of said lands from said Reka and Ferdinand Huckstead and Anna Bartels to appellee, but also that a deed subsequently made to appellant, Forthman, should be canceled. The bill was subsequently dismissed as to Anna Bartels. A joint and several answer was filed by Reka and Ferdinand Huckstead, and the appellant, to which answer replication was filed. Testimony, oral and documentary, was introduced in open court before the chancellor, and the hearing resulted in a decree in favor of appellee, the complainant below. The present appeal is prosecuted from said decree.

The material facts are substantially as follows: One Christopher Huckstead died testate on November 28, 1901, leaving Reka Huckstead, his widow, and Ferdinand Huckstead, and Anna Bartels, (formerly Anna Huckstead), his children, and only heirs-at-law. At the time of his death, he was the owner seized in fee of the eighty acres above described, and also of certain personal property, the value of which was afterwards appraised at the sum of $446.00. His will was made on October 31, 1901, and by the terms thereof he bequeathed to Reka Huckstead, his wife, a life estate in the south half of said eighty acres, with remainder over at her death to his son, said Ferdinand Huckstead. The north forty acres of the eighty acre tract he devised to his son, said Ferdinand Huck-

stead. By the terms of the will, as thus stated, the title to the whole eighty acres was in Reka Huckstead, the widow, and Ferdinand Huckstead, the son. No interest in the land was devised to Anna Bartels. The will was probated in the county court of Jasper county at the February term, 1902, and one Charles Schmidt, the son of Reka Huckstead by a former husband, was appointed administrator with the will annexed, and qualified as such. In April, 1902, four small claims were allowed against the estate, amounting to $172.00, and the appraisers fixed the widow's award at $807.00, the reports of said appraisers being approved by the court March 3, 1902. Personal property was inventoried to the amount of $446.00.

Prior, however, to the appointment of the administrator, and on January 20, 1902, a written agreement was made between Reka Huckstead, widow of Christ Huckstead, deceased, of the county of Jasper, Illinois, party of the first part, and Ferdinand Huckstead of Effingham county, Illinois, of the second part, and Anna Bartels, formerly Anna Huckstead, of Day county, Territory of Oklahoma, party of the second part, which written agreement witnessed "that for and in consideration of the stipulation hereinafter mentioned," the said parties of the first and second part "agree as follows: That we have sold to one Joseph Deters, of the county of Effingham, State of Illinois, the estate known as the Christ Huckstead estate, and described as follows:" (describing the eighty acres as above), "for the sum of $2100.00, and that the said Joseph Deters agrees to pay all of said purchase money on the delivery of a good title to the said described land, less $800.00 and $102.72, interest on mortgage and money; making a total deduction of $902.72, and leaving a balance to be paid by said Joseph Deters of $1197.28; and that the heirs hereby further agree to give possession of the said described land to Joseph Deters on or before March 1, 1903. And we further agree to give pur-

chaser a good deed, free from all encumbrance, with abstract of title up to date. All taxes to be paid by the said heirs for 1902." This written agreement was signed by Reka Huckstead and Ferdinand Huckstead under their respective seals, but was not signed by Anna Bartels, or by the appellee, Joseph Deters. It was acknowledged on January 20, 1902, before a notary public in Effingham county by Reka Huckstead and Ferdinand Huckstead, and was acknowledged by Anna Bartels on January 24, 1902, before a justice of the peace in Day county in the Territory of Oklahoma, and was filed for record on May 10, 1902.

When Christ Huckstead died, there was a mortgage upon the eighty acres in question, executed by the testator and his wife in the former's lifetime to H. P. Wyatt, dated January 28, 1898, to secure a note of the same date for $800.00 payable five years from February 1, 1898, with interest at six per cent per annum payable semi-annually, and evidenced by coupon notes, all the notes being payable to the order of said Wyatt. On January 22, 1902, two days after the making of the contract, the appellee, Deters, took up and paid the mortgage notes, which were assigned and endorsed to him by Wyatt. Upon the hearing below, the original mortgage, and the principal note, and coupons, paid by Deters, were introduced in evidence before the court. The amount, paid by Deters for the notes and mortgage, was $902.72, being $800.00 principal and $102.72 interest.

The contract was made a part of the bill, and the bill averred the complainant's readiness to comply with the agreement; that complainant, Deters, so informed the defendants on May 10, 1902; that on August 12, 1902, complainant applied to Reka and Ferdinand Huckstead, and offered to pay them $1197.28 on delivery to him of a warranty deed for said land; that they refused to do so; that complainant Deters "on the 22d day of January, 1902, did pay to H. P. Wyatt $972.72, principal and interest on

mortgage secured by premises, which sum was a part of purchase price of said premises;" that Reka Huckstead, Ferdinand Huckstead, and Anna Bartels on June 2, 1902, conveyed by warranty deed said eighty acres to Theodore Forthman; that Forthman knew at the time of above contract. The bill prays, in addition to what is above stated, that $1197.28, the residue of purchase money, be placed to be used in payment of debts of the estate of Christ Huckstead, probated or to be probated; and for other relief.

The answer admits that Reka and Ferdinand Huckstead entered into a written agreement to sell the land, but denies that Anna Bartels joined in it, and denies that Deters was a party to it, or in any way connected therewith, and denies that he covenanted to pay $2100.00, or any sum for the land; denies that he was ready and willing to comply, and avers that he refused to become the purchaser of said real estate, and only showed a willingness to purchase the land after it had been sold to Forthman; denies that Deters paid Wyatt $972.72, principal and interest of mortgage, as part of the purchase price of said premises, but avers that he purchased said mortgage debt, and caused the same to be assigned to himself, and is now the owner thereof, unsatisfied and unpaid, and capable of being enforced against said real estate. The answer admits the conveyance of the land to Forthman, and avers that, Deters not being a party to the agreement, the same could not be enforced at law or in equity against him; that there was no mutuality or reciprocity of obligation, created by said agreement between Deters and the defendants below.

On April 13, 1903, the court by its decree found that the land was devised as above stated to Reka and Ferdinand Huckstead; that the agreement of January 20, 1902, was entered into between said Reka and Ferdinand Huckstead and Anna Bartels with the appellee Deters; that said agreement was filed for record May 10, 1902; that

Deters had tendered Reka and Ferdinand Huckstead $1197.28, after having paid the mortgage and interest mentioned in the contract amounting to $902.72; that the defendants below refused to make deed to Deters; that on February 3, 1902, Charles Schmidt was appointed administrator with the will annexed of the estate of Christopher Huckstead, deceased; that the only real estate inventoried was the premises in controversy; that Deters had offered to deposit $1197.28 to pay off, and release, claims against estate, in the hands of any person defendants below would designate; that the defendants refused the offer; that June 2, 1902, Reka and Ferdinand Huckstead conveyed the premises to Theodore Forthman; that Forthman purchased the premises with knowledge of Deters' rights; and it was therein decreed that the agreement be specifically performed; that Reka and Ferdinand Huckstead execute to Deters warranty deed for the land, and deliver the same, with abstract of title, to the clerk of the court on or before August 1, 1903; that Theodore Forthman also convey the premises to Deters on or before August 1, 1903; that, if conveyances are made, Deters, within one day after August 1, 1903, pay the clerk $1197.28; that the clerk shall keep the money, until premises are released from all claims allowed against said estate; that, if Deters is compelled to discharge said liens, then that the sum of money which he is compelled to pay for that purpose, be deducted from the amount deposited with the clerk, and the balance, if any, be paid to Forthman; that, if Reka, or Ferdinand Huckstead, or Theodore Forthman, pay said claims, then the clerk shall pay to Forthman said sum of money so deposited with him; that, in the event of an appeal by the defendants or any of them, Deters need not pay said sum of $1197.28 to said clerk until the final determination of the case; that if defendants execute the deed as required, and deposit the same with the clerk and pay off said claims, then the clerk shall deliver the same to Deters upon pay-

ment by him of said sum of $1197.28, and the clerk shall pay said $1197.28 to Forthman; that, if the defendants comply with said decree and Deters neglects to comply on his part, he shall, at the election of the defendants, be held to acquiesce in said Reka and Ferdinand Huckstead's failure to perform said contract, and shall not be entitled to a specific performance, or any damage for non-performance; that the defendants, Reka and Ferdinand Huckstead, pay complainant's costs. By the terms of the decree the court reserved for future consideration the matter of ascertaining whether Reka and Ferdinand Huckstead removed the liens of the claims, allowed against the premises in controversy in the estate of the deceased, and how much, if anything, Deters may be compelled to pay to remove the same.

An appeal has been taken from the decree rendered by the circuit court by the present appellant, Theodore Forthman, but no appeal has been taken by the defendants below, Reka Huckstead and Ferdinand Huckstead.

JAMES W. GIBSON, for appellant.

DAVIDSON & ISLEY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first reason, urged by the appellant for the reversal of the decree of the trial court, is that the contract was not signed by appellee, Deters, and, therefore, is not such a contract as a court of equity will specifically enforce. It is true, that the contract was signed only by Reka and Ferdinand Huckstead, the vendors, and was not signed by appellee, Deters, the vendee. But the evidence shows clearly that, after the execution of the contract by Reka and Ferdinand Huckstead, it was delivered by them to appellee, and appellee accepted the contract, and on May 10, 1902, recorded the same. The evidence is also clear that he paid a part of the

$2100.00, named in the contract as the purchase money of the land, to-wit, $902.72, to pay off and take up the amount of principal and interest, due upon the mortgage resting upon the land.

It is well settled by the decisions of this and other courts that, where a party accepts and adopts a written contract, even though it is not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound by them. (*Memory* v. *Niepert*, 131 Ill. 623; *Ames* v. *Moir*, 130 id. 582; *Lowber* v. *Connit*, 36 Wis. 176; *Plumb* v. *Campbell*, 129 Ill. 101). In *Memory* v. *Niepert, supra*, it was claimed that the contract there under consideration, because it was signed by one party only, lacked mutuality, that is, failed to show that it received the assent of the party not signing it, and, therefore, was no evidence of any contract whatever, but this view was held to be unsound. There, as here, the party, signing the contract, stated that he had "sold" to the party, not signing the same, the property, therein described, upon the terms therein set forth. The same is true of the contract in the case at bar, which contains the following words: "We have sold to one Joseph Deters" the eighty acres in question, describing the land. By these words Reka and Ferdinand Huckstead declared and acknowledged, that they had sold the premises in question to Deters, and this declaration or acknowledgment was binding upon them. As we said in the *Memory case, supra:* "The word 'sold' imports, not a mere proposition to sell, but a consummated contract of sale. * * * The writing in this case is the acknowledgment of a contract, in which there is complete mutuality—a buyer and a seller—a purchase and a sale. It is clear that the execution and delivery of such a writing by the seller to the buyer is not the submission of a mere proposition, but the execution of a contract capable of being enforced, as such, against him." The contract here also recites "that said Joseph Deters agrees to pay all of said purchase

money on the delivery of a good title to said described land," etc. By these words Reka and Ferdinand Huckstead further declared and acknowledged that Deters had agreed with them to pay the purchase money.

It is claimed, however, that the contract lacks mutuality, so as to render it enforceable as a written agreement, upon the alleged ground that it could not be enforced against Deters, the purchaser, if the breach had been on his part. In *Ames* v. *Moir, supra,* however, where a similar contract was signed by the purchaser, and suit was brought against him by the sellers for the purchase money, we said: "When the sellers accepted the paper as a contract, they became bound by its terms and conditions as completely as if they had in form signed the paper." In *Lowber* v. *Connit, supra,* it was said by the Supreme Court of Wisconsin: "Where the contract has been accepted and adopted by the party not signing it, he does assent and agree to it on his part, and the law implies a promise to perform." In the *Memory case* we further said: "The delivery of a writing and its acceptance and adoption by the party, to whom it is delivered, are necessarily facts *dehors* the writing itself, and must, therefore, be proved by extrinsic evidence; and where mutuality is established by proof of the acceptance of the writing, the contract is, notwithstanding such resort to parol evidence, a contract all of which is in writing. * * * But where the writing on its face purports to be a consummated contract, the mere acceptance and adoption of the writing establishes mutuality, and makes the contract binding on both parties." We see no reason, therefore, why, if there had been a breach of the contract by the appellee, it could not be enforced against him, even though it was not signed by him. The contract in the case at bar was made under seal, and, hence, must be regarded as having been made upon a sufficient consideration. (*Guyer* v. *Warren,* 175 Ill. 328; *Hayes* v. *O'Brien,* 149 id. 403). The terms of the contract are criti-

cised by counsel, but it gives the names of the contracting parties, a proper description of the premises sold, the time for the delivery of possession, the price and mode of payment, the character of the title to be conveyed, and the terms which go to make up a contract of sale.

*Second*—In a proceeding for specific performance the complainant must prove that he has been ready, willing and eager to perform, and the burden is upon him to show a full and complete performance, or offer to perform on his part. (*Morse* v. *Seibold*, 147 Ill. 318; *Tryce* v. *Dittus*, 199 id. 189). It is claimed by the appellant, that the appellee in this case has not proved his willingness to perform the contract, or any offer on his part to perform it. We do not think that this claim is sustained by the evidence. The appellee, Deters, not only paid the principal and interest due upon the mortgage upon the property within two days after the execution of the contract, but he tendered and offered to pay the balance of the purchase money, over and above the amount due on the mortgage, to-wit, $1197.28, as soon as a deed, showing good title, should be given to him, as required by the contract. It will be observed, that the contract for the sale of the eighty acres to Deters was made before any administration was taken out upon the estate of the deceased, Christopher Huckstead. The real estate, belonging to the deceased testator, was liable to be sold by the administrator for the payment of the claims to be allowed against the estate, and the appellee insisted that whatever claims there might be against the estate should be paid off, in order to relieve the land from its liability for their discharge. We have held in a number of cases, that the lands of a decedent are liable to be charged with the debts of the estate. (*Noe* v. *Moutray*, 170 Ill. 169, and cases there cited). The proof shows that appellee was desirous of going abroad to Germany, and that he did leave for Germany on May 11, 1902, and did not return until August 6, 1902. Before his departure, and on

February 3, 1902, Charles Schmidt was appointed admin-
istrator of the estate.   On March 3, 1902, the report of
the appraisers, fixing the widow's award at $807.00, was
approved by the court, and, on April 11 and June 7, 1902,
claims against the estate were allowed to the amount of
$172.00, making a total, including the widow's award, of
$979.00, which, after deducting $446.00 of personal prop-
erty, left $533.00 as the amount of the claims due from
the estate.   The appellee proposed to pay the money, in-
cluding the amount necessary to discharge these claims,
and offered, as he was obliged to leave the country, to
place the money in the hands of his own attorney, or in
the hands of the attorneys of Reka and Ferdinand Huck-
stead, the vendors, in order that a portion of it might be
applied to the payment of the claims allowed, and the
balance be paid over to the vendors.   As we understand
the evidence, the money was left in the hands of appel-
lee's attorney for such purpose, or left in such a way
that the attorney had the power to pay the $1197.28 as
soon as a deed, conveying good title, was delivered to
him.   Appellee left for Europe with the understanding
that the claims, when allowed, would be paid off with a
portion of this amount.   As soon, however, as appellee
had left the country, and on June 2, 1902, the vendors,
Reka and Ferdinand Huckstead, in violation of the agree-
ment, made a deed of the land to the appellant for a
nominal consideration of $2350.00, which deed was never
recorded.   Upon the return of appellee on August 6, 1902,
he ascertained that this deed had been made to the ap-
pellant, and he tendered the money, and demanded a
deed, which demand was refused.   We discover nothing in
the evidence to indicate that appellee did not do every-
thing, which he could do, to show his willingness to per-
form the contract on his part, nor anything to show that
he did not offer to perform it.

The decree of the court is criticised, upon the alleged
ground that creditors would have two years within which

to file their claims, and that the vendors could not be compelled to wait two years for all the claims to be filed before receiving the purchase money for the land. The decree is not capable of the construction thus placed upon it, but provides that the clerk shall keep the money, until the premises are released "from all liens of said claims allowed against said estate of Christopher Huckstead." The claims allowed, and which were to be paid out of the money, by the terms of the decree, amounted to the sum already mentioned.

It is further said by the appellant, that the mode, provided by the decree for the extinguishment of the liability of the land to pay the claims allowed, was not a specific enforcement of the contract as made, but was tantamount to the insertion therein, and the enforcement, of new terms, so as to create a new contract for the parties. The decree in all its material provisions is substantially the same as the decree, approved by this court in *Hunt* v. *Smith*, 139 Ill. 296. By the terms of the contract the vendors agreed to give "a good deed free from all encumbrance with abstract of title up to date." The obligation, thus created by the contract, involved the duty of removing the liability of the land for the payment of the claims allowed. In *Hunt* v. *Smith, supra,* where it appeared that, at the time of the decree, the lien of a mortgage, held by an insurance company, had not been removed, we held that the obligation on the part of the vendor to convey an unencumbered title necessarily involved the legal obligation or duty to remove the lien of the mortgage, and we there said: "This is in no sense a creation of a new contract for the parties, but only a mode, and we think an appropriate mode, of enforcing the legal obligations imposed by the contract, which the parties have made for themselves."

*Third*—It is further claimed, on the part of the appellant, that the appellee, Deters, did not pay off the mortgage upon the premises, but that he obtained an

assignment to himself of the note and mortgage from the original mortgagee, Wyatt, and held it uncanceled against the land. In this connection it is also insisted, that the note and mortgage were not surrendered. The appellee produced upon the trial the original mortgage, and the assignment thereof to himself, and the unpaid principal and coupon notes, secured by the mortgage, transferred to himself. Appellee alleges in his bill, that he paid the principal and interest due on the mortgage to Wyatt; and the decree rendered by the court finds that he paid the mortgage and interest. This allegation in the bill as to payment would estop appellee from asserting the mortgage claim against the property, and the finding of the decree, that the mortgage was paid, protects the vendors and their grantee; and they have no reason to complain.

Appellee being the holder of the mortgage—when the original vendors in the contract, or their grantee, the appellant, should execute to him a deed—there would unquestionably be a merger in appellee of the two estates, the legal estate of mortgagor and the equitable estate of mortgagee. It is well settled that, at law, when a greater or lesser, or a legal and equitable estate, coincide in the same person, the lesser, or the equitable estate, is immediately merged and annihilated. (15 Am. & Eng. Ency. of Law,—1st ed.—p. 314). It is true that the question, whether or not a merger takes place in equity, depends upon the intention of the parties, and a variety of other circumstances. (Ibid). But, "a merger will be prevented by equity only, however, for the purpose of promoting substantial justice; it will not prevent a merger, where such prevention would result in carrying a fraud or other unconscientious wrong into effect." (15 Am. & Eng. Ency. of Law,—1st ed.—p. 315). Pomeroy, in his work on Equity Jurisprudence, (sec. 794) says: "Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be pre-

vented and a mortgage or other security to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. Equity only interposes to prevent a merger, in order thereby to work substantial justice." In this case, it would be an injustice to the original vendors in the contract, and to appellant, their grantee, to permit appellee to hold the mortgage, as a subsisting encumbrance, and the note, as a subsisting indebtedness, after a deed had been executed to the appellee by Reka and Ferdinand Huckstead, and the appellant. Hence, upon the execution of the deed, required by the contract, to appellee, there would be a merger, which would protect the interest of appellant, and the vendors in the contract. Although a conveyance of the mortgagor's estate to the mortgagee does not operate as a merger in equity unless it was intended to have that effect, yet when the holder of the notes, secured by the mortgage, accepts a conveyance from the mortgagor of the lands, and gives the notes up to the maker, or, as here, deposits them in court, and no reason exists for keeping the encumbrance alive, there will be a complete merger, and the mortgagee will acquire the entire title. (*Shippen* v. *Whittier*, 117 Ill. 282).

The contract is capable of the construction, that the appellee, Deters, assumed the payment of the mortgage upon the property, because the purchase price of the property is stated in the contract to be $2100,00, and the $2100.00 included the principal and interest due upon the mortgage. The rule is that, where the grantee of the mortgagor takes a conveyance of the land subject to the mortgage, and expressly assumes and promises to pay it as a part of the consideration, the assignment of the encumbrance to the owner of the property works a merger thereof, because such grantee is thereby made principal debtor and the land is the primary fund for payment, so that, if he pays off the charge, it becomes

extinguished. (*Clark* v. *Glos*, 180 Ill. 556; 2 Pomeroy's Eq. Jur. secs. 797, 793.) Inasmuch, therefore, as an execution of a deed to appellee in accordance with the terms of the decree would create a merger, no injury could result to appellant, if the terms of the decree should be carried out.

*Fourth*—The evidence in the case shows clearly that, before appellant accepted his deed from the heirs or devisees of Christopher Huckstead, deceased, he had notice both actual and constructive of the contract of sale, made with appellee on January 20, 1902. That contract was on record as early as May 11, 1902, and appellant did not obtain his deed until June 2, 1902. In addition to this, the proof shows that appellant went to the recorder's office, and saw the contract with appellee, as there recorded. He, therefore, had full notice and knowledge of the rights of appellee under the contract before accepting his deed. Consequently, appellant, not being a *bona fide* purchaser without notice, will be compelled to perform the contract of his vendors, Reka and Ferdinand Huckstead. He stands upon the same equity as they did; although he is not personally liable, yet he is properly decreed to convey the land in the same manner as his vendors; in other words, he is treated as a trustee of appellee, the first vendee. "The general principle, upon which this doctrine proceeds, is that, from the time of the contract for the sale of the land, the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. And every subsequent purchaser from either, with notice, becomes subject to the same equities as the party would be from whom he purchased." (1 Story's Eq. Jur.—12th ed.—sec. 789). In Pomeroy on Specific Performance, (sec. 465) it was said: "When the vendor, after entering into a contract of sale, conveys the land to a third person, who has knowledge or notice of the prior agreement, * * *

such grantee  *  *  *, can be compelled, at the suit of the vendee, to specifically perform the agreement by conveying the land in the same manner, and to the same extent, as the vendor would have been liable to do, had he not transferred the legal title." (See also *Bryant* v. *Booze,* 55 Ga. 438; *Hunt* v. *Smith, supra; Chicago and Eastern Illinois Railroad Co.* v. *Hay,* 119 Ill. 507; *Wollensak* v. *Briggs,* 119 id. 453; *Bishop* v. *Newton,* 20 id. 175).

For the reasons above stated, we are inclined to think that the decree of the circuit court is correct, and, accordingly, it is affirmed.          *Decree affirmed.*