## LEONARD v. KING et al.

(Court of Civil Appeals of Texas. Dallas. March 7, 1914. Rehearing Denied March 28, 1914.)

1. VENDOR AND PURCHASER (§ 38*) — DECEPTION CONSTITUTING FRAUD — INJURY FROM FRAUD.

Where, the better to enable her agent to perfect a sale of land, a vendor executed to him a contract of sale which the agent on the same day assigned to the purchaser, the fact that, at the time of the execution of such contract, the agent represented that he already had an offer from the prospective purchaser could not be the basis of a charge of fraud to avoid the contract, since the vendor was in no way injured.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 61–65; Dec. Dig. § 38.*]

2. BROKERS (§ 102*) — FRAUD OF BROKER — RIGHTS ACQUIRED BY PURCHASER.

The fact that the agent of a vendor, in perfecting a sale, made misrepresentations to the vendor could not affect the purchaser, who had no knowledge of such misrepresentations.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 146; Dec. Dig. § 102.*]

3. VENDOR AND PURCHASER (§ 143*) — CONSTRUCTION OF CONTRACT.

A clause in a contract of sale providing that the vendor was to have a reasonable time in which to perfect her title, and, should she be unable to do so, the contract was to be void, was for the benefit of the vendee, and the vendor could not insist that the contract was void, where the vendee was willing to accept the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 267–270, 311; Dec. Dig. § 143.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit for specific performance by S. W. King, Jr., and others against Mrs. M. L. Leonard. From a decree for complainants, defendant appeals. Affirmed.

See, also, 135 S. W. 742.

N. G. Turney, W. L. Crawford, and J. C. Muse, all of Dallas, for appellant. Dabney & Townsend, M. D. Gano, and W. M. Coombes, all of Dallas, for appellees.

RAINEY, C. J. This is a suit for specific performance of a contract of sale of a certain lot in the city of Dallas, brought by appellee S. W. King, Jr., against appellant, Mrs. M. L. Leonard. The trial court instructed a verdict for appellee, which was accordingly done, and judgment rendered for appellee.

On November 12, 1909, the following contract was entered into, to wit:

"The State of Texas, County of Dallas.

"This contract made and entered into this 12th day of November, 1909, by and between Mrs. M. L. Leonard, hereinafter styled seller (acting herein by herself) and J. S. Kendall, hereinafter styled purchaser, witnesseth:

"Seller hereby sells to purchaser and purchases from seller for the price of one hundred thousand ($100,000.00) dollars, and upon the terms and conditions hereinafter set out, the following described property, to wit: In the city and county of Dallas, state of Texas, being the two-story building and 50 by 100 feet on which it is situate at the southeast corner of Ervay and Commerce streets, fronting 50 feet on the south line of Commerce and 100 feet on the east line of Ervay street.

"1. Said purchase price is payable as follows: One thousand dollars paid by purchaser upon the execution of this contract, the receipt of which is hereby acknowledged; twenty-four thousand ($24,000) dollars to be paid by purchaser upon the execution and delivery of a general warranty deed, to said premises, and the remainder of said purchase price to be paid according to the following terms: In six notes, five in the sum of $5,000 each, due one, two, three, four and five years after date of deed, and one in the sum of $50,000, due six years after date of deed; said notes bearing interest at the rate of six per cent. per annum, interest payable semiannually. (Executed in duplicate; one copy to purchaser, one copy and deposit of $1,000 left with J. W. Thompson, according to terms of this contract.) Such deferred payments to be evidenced by vendor's lien notes executed by purchaser and secured by a vendor's lien expressly retained in said deed and by a deed of trust containing power of sale, together with the usual covenants as to default, taxes, insurance, etc., upon said property.

"2. Seller is to furnish purchaser an authentic abstract showing good title in seller to the property to be conveyed. Should said abstract not show good title in seller, seller is to have a reasonable time (not to exceed thirty days) in which to perfect said title. Should seller not be able to perfect said title within said time, then this contract is to be void and the purchase money paid at the time of the execution of this contract to be returned to purchaser. ($2,500 commission to be paid by seller to Hann & Kendall upon completion of this sale.)

"3. Purchaser agrees that should abstract show good title in the seller, purchaser shall within thirty days from delivery of said abstract pay the balance of the cash pay-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ment and execute the notes for the deferred payments and the deed of trust hereinabove provided for to secure the deferred payments, at which time seller shall deliver to purchaser a general warranty deed conveying to purchaser the said property in fee simple. Taxes for the year 1909 to be paid by seller.

"Witness our hands in duplicate this 12th day of November, A. D. 1909.

"[Signed]      M. L. Leonard, Seller,
"J. S. Kendall, Purchaser.

"Rec'd of S. W. King, Jr., the sum of one thousand dollars ($1,000) and the within contract is hereby transferred to him.

"J. S. Kendall.
"Accepted: S. W. King, Jr."

The assignment of said contract by Kendall to King was made on the same day that the contract was executed. On the following day, to wit, November 13, 1909, Mrs. Leonard executed a general warranty deed, conveying the property to King, and King executed the notes and deed of trust evidencing and securing the deferred payments, and, the said deed, notes, and deed of trust, together with King's check for $24,000, were delivered to the American Exchange National Bank, with a joint letter as follows:

"November 13, 1909.

"American Exchange National Bank, City—Gentlemen: We herewith hand you deed from M. L. Leonard, a feme sole, to S. W. King, Jr., conveying 50x100 feet at the southeast corner of Commerce and Ervay streets, known as lot 4 in block 136 of Smith, Murphy & Martin's addition to the city of Dallas, Texas, for a consideration of $100,000, payable as follows: $25,000 in cash and six notes, five for the sum of $5,000 each, and one for the sum of $50,000, due and payable one, two, three, four, five and six years, respectively, after date, all bearing interest at the rate of six per cent. per annum, payable semiannually and secured by vendor's lien and deed of trust on said property. We also hand you herewith notes and deed of trust from S. W. King, Jr.; all of these papers, that is, deed, notes and deed of trust, are properly executed and acknowledged by the proper parties; we also hand you herewith S. W. King, Jr's., check for $24,000, payable to your order, being the balance of the cash payment to be made in this sale, Mrs. Leonard having $1,000 already as a deposit. It is understood that you are to hold deed, notes and deed of trust and check in escrow until abstract can be made and furnished Mr. King, and until Mr. King can have the title examined by his attorney, not to exceed time granted in hereinafter mentioned contract. Upon the approval of the title to the above-described property, you are to deliver to Mr. King the deed herewith, and to Mrs. Leonard the notes and deed of trust herewith, together with $24,000 cash, and the contract entered into between M. L. Leonard and J. S. Kendall and assigned by said Kendall

to S. W. King, Jr., shall be carried out according to its terms and conditions.

"[Signed]      S. W. King, Jr.
"Mrs. M. L. Leonard.

"You are hereby authorized to pay out of the cash received in the above transaction the sum of $2,500 to Hann & Kendall, as commission upon the consummation of the above transaction.

"[Signed]      Mrs. M. L. Leonard."

Said contract was extended for the pur pose of giving Mrs. Leonard time to clear her title, once until January 12, 1910, and again until February 12, 1910. On February 3, 1910, King brought this suit against Mrs. Leonard for specific performance of said contract, and prayed for the appointment of a receiver. A judgment was entered appointing a receiver, from which Mrs. Leonard took an appeal, and said judgment was affirmed.

On March 10, 1913, by his third amended petition, King alleged that he was satisfied with the title, and, in the event Mrs. Leonard only owned a portion of said land, that he have specific performance to said part, and that the purchase price be proportionately abated. He also made the American Exchange National Bank and James Spillers parties, and that the bank be directed to deliver the abstract to him, and that all interest to said land be divested out of Spillers.

Mrs. Leonard, by amended answer, February 15, 1911, alleged that the contract sued on was procured by fraud on the part of J. S. Kendall, who, while pretending to act as her agent, procured the contract in his own name, representing that he had an offer from King, etc.; that she did not have a good title, in that she was holding it for herself and her two sisters, Mrs. Spillers and Mrs. Anderson, having inherited it from her deceased mother; and that King was charged with notice of the fraud alleged. J. W. Thompson and J. S. Kendall were made parties, and answered by pleading the general issue. The bank answered that it was holding the papers in escrow, and offered to deliver them in accordance with the order of court. James Spillers answered that he held one-third interest in said land as heir of his mother, and one-third by conveyance from Mrs. Anderson.

King, by first supplemental petition in replication to Spillers, alleged that Spillers had no interest in said property, having deeded it to Mrs. Leonard on February 6, 1889, and that Mrs. Leonard held title to said land by limitation.

Spillers replied that in 1897 he had reconveyed to Mrs. Leonard, and that there was no consideration for either conveyance. King then replied that said plea of Spillers should not be heard, as he had bought without notice of said matters, and bought for a valuable consideration.

Mrs. Leonard then filed a supplemental an-

swer, claiming rents, and that by her letter of November 13, 1909, she did not intend to substitute a new contract for the original contract between herself and J. S. Kendall, etc., and that King did not waive any infirmities in the contract, etc.

Judgment was rendered against Mrs. Leonard and Spillers.

Complaint is made by appellant that the court erred in giving a peremptory instruction for the plaintiff King.

[1] The contention is that the contract of sale was made with J. S. Kendall, who was acting as her agent, and who committed a fraud on her, in that he represented to her that King had made an offer of $100,000 for the land, when, in fact, King had made no such offer, and that, by reason of such representation, she was induced to make the contract to sell to Kendall.

Mrs. Leonard pleaded and testified that Kendall was her agent, and that the contract was made as it was the better to enable the sale to be consummated with King. The uncontradicted evidence shows that on the same day she made the contract Kendall took it over to King's office and there transferred it to King, who paid Kendall $1,000 as earnest money, which Kendall had put up with Thompson, who was acting as Mrs. Leonard's attorney, and on the next day Mrs. Leonard and King executed the joint letter to the American Exchange National Bank, which, with $24,000 in cash and the escrow papers, were delivered to the bank. The undisputed testimony shows that Kendall was not King's agent, received no commissions from him, and never had any interest in the property, nor in the contract, further than the commission he was to receive for consummating the sale.

[2] Kendall did with the contract just what Mrs. Leonard intended he should do with it—that is, he made a sale to King, for the price she understood from Kendall that she was to receive—and we are unable to see how Mrs. Leonard was in any way injured by the transaction. Besides, it is undisputed that King knew nothing of the representations of Kendall to Mrs. Leonard, and acted in good faith with Kendall in the transaction, and there is no such fraud as will invalidate the contract. Mrs. Leonard, by signing with King the letter of instruction to the bank, ratified the acts of Kendall. Such acts being in accord with her desire, and in accord with her intentions when executing the contract to Kendall, it would be inequitable to King to hold the contract void on the ground of fraud.

[3] Mrs. Leonard further contends that the proviso in the contract that, if she could not furnish an authentic abstract showing good title or a perfect one, within a reasonable time, said contract to be void, etc., renders the contract void, as she did not show such a title, therefore she is not liable on

said contract. We think said proviso in the contract inures only to the benefit of King, and, when he is willing to accept the title, Mrs. Leonard cannot claim that the contract is void for her failure to furnish an abstract showing a perfect title.

Before the last extension of time agreed upon for perfecting the title had expired, King, in company with his attorney, demanded of the bank a delivery of the deed to him, which was refused, because Mrs. Leonard had instructed it not to deliver the deed, and King brought this suit before the time of extension had expired, and alleged that he was willing to accept the title. Leonard v. King, 135 S. W. 743; Hunt v. Smith, 139 Ill. 296, 28 N. E. 809; Otto v. Young, 227 Mo. 193, 127 S. W. 10; Hale v. Cravener, 128 Ill. 408, 21 N. E. 534; Roberts v. Wyatt, 2 Tamton, 268; Pomeroy (2d Ed.), §§ 394–424.

In the case of Otto v. Young, supra, where this question was involved, the court said that: "In what we have said in our discussion of those cases, we have not intended to say or imply that, if the defect in the title of defendant in this case had been such that he could not remedy, he would have had the right to declare the contract rescinded, and have escaped all liability. That clause was for the benefit of the buyer, not of the seller. The buyer could have refused to complete the purchase if there was an incurable defect, but he could have waived it if he had seen fit, and have been entitled to a specific performance with that exception." To hold otherwise would give the seller ground for failure to make any effort to perfect the title, whether the defects were curable or not, and, if for any reason he did not desire to comply with the contract, declare the same void and refuse to comply with its terms.

Mrs. Leonard purchased the lots in controversy in the year 1879, and paid the purchase price therefor, and she has possessed and controlled the same ever since, except possibly two or three years, when Mrs. Stull lived on the place, just after the purchase, until she died in 1882. It is true she had the deed made to Mrs. Stull, her mother. Mrs. Stull left surviving her three daughters, Mrs. Leonard, Mrs. Spillers, and Mrs. Anderson. Neither of the last two ever made any claim to the lots, but left it in Mrs. Leonard's possession and control. Nora Spillers died, and her interest, if any she had, descended to James Spillers, her son, and who was a party to this suit, and who claimed a two-third interest in said land, one-third by inheritance from his mother, Nora Spillers, and one-third interest by deed from Mrs. Anderson. Judgment was rendered in favor of King against James Spillers, from which judgment Spillers has never appealed. We take it that Spillers' claim to the land was not made in good faith, and that Mrs. Leonard had good title to the land, or could have perfected the title, and, if not, that she had

a perfect title by limitation. She was the owner of the land when she entered into the contract of sale and should have no fear of being called upon to respond to her warranty.

We see no fact which should have been passed upon by the jury, and there was no error in refusing appellant's special charges.

The judgment is affirmed.