# W. H. OTTO v. ROBERT YOUNG et al., Appellants; JOHN EDWARDS et al., Defendants.

### Division One, March 31, 1910.

1. **SPECIFIC PERFORMANCE: Abstract: When to be Furnished.** Where the contract does not limit the time in which an abstract of the chain of title is to be furnished, the law requires it to be procured within a reasonable time.

2. ———: ———: **Reasonable Time Not Pleaded: Waiver.** If after the time in which the purchaser was required to give written notice of defects in the title had expired, the seller undertook to rectify these defects and continued to give assurances that he would consummate the sale as soon as he could do so, and when he finally refused to comply with the contract to sell placed his refusal on other grounds, he will be held to have waived any delay in the notice of defects in the title.

3. ———: **Seller's Option to Repudiate Sale.** The contract provided that the purchaser should procure an abstract in a reasonable time and have twenty days thereafter "for the examination of the abstract and report to the seller any defects in the title. If the title is found to be defective, the seller agrees to have the same rectified within a reasonable time, which is not to exceed thirty days from the date of written notice of such defects; but in case such defects in the title be not remedied within that period, and no extension of time is had between the parties hereto, this contract shall be null and void." *Held*, that, the purchaser having given written notice of defects in the title, the seller did not thereafter have the option of abandon-

227 Sup—13

ing the sale, but it was his duty to rectify the defects.  The clause which says if the defects are not removed the contract is to become void, is for the benefit of the purchaser.  It means that he is not bound to accept the deed and pay the money unless the title is good; yet if he chooses to waive the defect and accept the title which the seller can make, he can do so.

4. ———: Incumbrance: Removal: Special Taxes.    Where the seller agreed to cure all defects in the title, it is his duty to remove an incumbrance of a special benefit tax which was a lien on the land when the contract was made, though not then payable.

5. ———: Interests of Other Heirs: Acquired by Vendor: Unauthorized Agent.  Where there were other heirs who are not parties to the contract, the court cannot compel them to perform.  Yet, if the seller made the contract as if he were the sole owner and with the purpose of selling their land to the purchaser, and when they were informed of it they at once ratified it by executing and delivering their deeds to the seller in order that he might specifically perform, the court will compel him to specifically perform, not only as to his own interests, but as to the heirs as well.  Even if he were an unauthorized agent, they had so far participated in the matter as to ratify his act.  And the same legal result would follow, if, instead of making the deeds to the seller they made them directly to the purchaser, and delivered them to the seller to enable him to perform his contract.

6. ———: ———: ———: ———: Consideration: Withdrawal.  Nor were such deeds by the other heirs to the seller, made for the purpose of enabling him to perform his contract to sell and delivered to him and by him held at the trial, whether they named him or the purchaser as grantee, without consideration; nor could they, after delivery for that purpose, withdraw them.  And their interests may be decreed to the purchaser by making them parties.

7. ———: ———: ———: ———: ———: ———: Made Parties.  And they had sufficient interest to justify the joining of them as defendants, although a suit against the seller alone might be maintained.

8. ———: Decree.  The judgment in specific performance accomplishes its purpose by decreeing that the title of defendants be vested in plaintiff, and that a copy of the decree be recorded in the office of the recorder of deeds.

9. ———: Tender.  A tender of the balance of the purchase money in the petition for specific performance, for the benefit of

"whom it may concern," is not bad. The facts of the controversy being stated in the petition, such a tender amounts to, the same thing as an offer to ask the court to adjudge, according to law, to whom the money belongs. Nor is it the duty of plaintiff to undertake to decide in what proportions the money should be divided among several defendants. What he is entitled to is a decree vesting him with defendants' title upon a payment into court of the entire purchase price named in the contract.

10. ———: **Subsequent Suit for Damages: Bar.** Plaintiff cannot have damages for a breach of a contract to sell land and specific performance of it also. But the institution of a suit for damages brought after the suit for specific performance was filed, and voluntarily dismissed before judgment, is no bar to a decree for specific performance.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune*, Judge.

AFFIRMED.

*H. M. Meriwether* and *C. E. Denham* for appellants.

(1) Robert Young had a perfect right to rescind the contract, under the admitted facts and circumstances of the case. Terte v. Maynard, 48 Mo. App. 463; Ryan v. Dunlap, 111 Mo. 610; Hartzell v. Crump, 90 Mo. 638; Lanitz v. King, 93 Mo. 513; Hollmann v. Conlon, 143 Mo. 369; 2 Addison on Contracts, p. 403, sec. 895; Mackey v. Ames, 31 Minn. 103; Ramsay v. West, 31 Mo. App. 676; Bales v. Roberts, 189 Mo. 49. (2) The petition did not allege any waiver of the terms of the contract by Young, but declared upon the contract as drawn. There was no waiver of the time to cure defects anywhere pleaded or alleged, nor was there any prayer for specific relief of any kind. The demurrers should have been sustained. Rush v. Brown, 101 Mo. 586; Lanitz v. King, 93 Mo. 513. (3) Otto abandoned his right to specific performance, if he ever had any, by suing for damages for a breach. (4) Specific performance of a contract should never

be decreed against persons who never made it—are not parties or privies to it. Kate and Nannie Young owned the property. They made no contract, and it is not charged that they were parties or privies to any contract with Otto. (5) No tender of performance was ever made by Otto, and he did not at the trial, and does not now, offer to perform. He offers to pay the money "to whom it may concern." Gloeckner v. Kittlaus, 192 Mo. 477; Goldwarte v. Crother, 9 Utah 186; Hollmann v. Conlon, 143 Mo. 381. (6) The decree was not responsive to the pleadings or the evidence.

*Samuel J. McCulloch* and *Karnes, New & Krauthoff* for respondent.

VALLIANT, J.—This is an appeal from a decree requiring of appellants specific performance of a contract for the sale of land. The petition was in two counts, the first being in the nature of a bill to quiet title under section 650, Revised Statutes 1899, but when the trial came the plaintiff dismissed as to that count. The second count on which the cause went to trial, and on which the decree appealed from was rendered, states substantially as follows:

Under date September 12, 1904, defendant Robert Young, Jr., executed a contract to sell to the plaintiff the land in question for the price of $6000, of which $100 was deposited with the defendant Robert Young, Jr., at the time, and $5900 was to be paid him upon his delivering to the plaintiff a warranty deed the title having been found to lie in him, and plaintiff tenders into court for the use and benefit "of whom it may concern" the balance of the contract price, $5900, or so much thereof as the court may by its decree order plaintiff to pay. That the land in suit was owned by Robert Young, Sr., in his lifetime, now deceased, who was the father of defendant Robert Young and who for identification is in the petition called Robert

Young, Sr., while defendant Robert is called Robert Young, Jr. That by the will of Robert Young, Sr., the title to this property passed to the defendants, his widow and children, and they had all conveyed their interests to the defendant Robert Young, Jr., or to such person as he may have named; the defendant Manter also had an interest in the land which he had in like manner conveyed to defendant Robert Young, Jr.; that defendants German, the unknown heirs and widow of George R. Hewitt and John Edwards, each claim an interest in the land and if their claims are found to be valid that the plaintiff be allowed a diminution in the agreed purchase price to the extent of the value of their claims. That certain special tax assessments were at the date of the contract a lien on the land and therefore the balance of the purchase money to be paid by plaintiff should be diminished by that much. In the last clause of the petition plaintiff asserts that certain acts should be required of defendants to perfect the title that he should receive from Robert Young, Jr. But as none of those acts was required in the decree it is unnecessary to state them here. The prayer of the petition was for ''such relief as to the court may seem meet and proper.''

To that petition defendant Robert Young, Jr., filed an answer in which he admitted the execution of the contract of September 12, 1904, for the sale of the land in question, and filed with his answer as an exhibit thereto a copy of the contract. Further answering he stated that the contract was ''purely optional,'' that plaintiff by its terms had twenty days in which to investigate the title and report to defendant any defects found; the seller was to have thirty days in which to remedy the defect and if not remedied within the time, and no extension thereof agreed on, the contract was to become void; that plaintiff did not give notice of defects in twenty days, and when given the defects were of such a character as could not be remedied in

thirty days; that by the terms of the contract it was optional with defendant whether he would remedy the defects, that he had a right to elect and did elect not to rectify the defects and thereby the contract became null and void. And for a further defense defendant averred that plaintiff after bringing this suit brought against defendant another suit for damages for the alleged breach of this contract and that suit was still pending, wherefore plaintiff must be adjudged to have abandoned this suit.

The answer of the appellants William, Kate and Nannie Young (after demurrer overruled) was a general denial.

The pleadings in the damage suit are also set out in this record and they become a part of the pleadings in this case by the fact that when the case was called for trial the parties agreed, and it was so ordered, that the two suits should be tried by the court together, and after that the plaintiff dismissed his damage suit, and it was then agreed by the parties and so ordered that the pleadings in the damage suit should be consolidated with and made to apply to this suit, making rather a confused mass of the pleadings instead of the simplicity and certainty that should be attained. But after sifting this mass we find that the pleadings transferred from the damage suit to this bring only two new issues into the case. In his crossbill in the damage suit defendant Robert Young, Jr., states that plaintiff has filed a *lis pendens* of his claim in the recorder's office and that it is a cloud on defendants' title which he seeks to remove. Plaintiff's reply, which is in effect an answer to the crossbill, gives his opinion of the legal effect of the contract, which is in conflict with that of defendant as pleaded in his answer to the petition in the equity suit. Plaintiff denies that the contract gives defendant the right to elect whether he will rectify the defects or declare the contract void, and avers that the clause in the contract which provides

that if the defects are not rectified within thirty days the contract is to become void and the earnest money returned to the purchaser is for the purchaser's benefit and it rests in his option; and replying to the averment that plaintiff did not notify defendant of the defects within twenty days, says that the notice was given within a reasonable time and that the defendant in his after negotiations with plaintiff waived the point of time; that defendant on receiving the notice did undertake to rectify all the defects except the item of the special park and boulevard assessment which he disputed. At the trial the plaintiff dismissed the suit as to all the defendants except the Youngs and Manter, German and Edwards. The plaintiff and the Youngs appeared by their respective attorneys, defendants Manter, German and Edwards made default. As to the three last named defendants it is well to say now that the court found that they had conveyed their interest to Robert Young, Sr., or Robert Young, Jr., which disposed of their interests, and as they have not appealed the only appellants are the Youngs.

The decree vests the title of all the defendants, that is, of the Youngs, and of Edwards, German and Manter in the plaintiff and directs that it be recorded in the office of the recorder of deeds, and that it stand. and operate as a conveyance of the right, title and interest of each of those defendants; that the costs be divided, one-half to be paid by the plaintiff and the other half by the Youngs; that the issues presented by the crossbill of Robert Young, Jr., be found for the plaintiff and the crossbill dismissed; that from the $5900 paid into court by the plaintiff the clerk shall first deduct the share of the costs adjudged against the defendants and the balance pay over to the Youngs on their executing a deed conveying their interest in the land in suit to the plaintiff together with a deed conveying the interests of defendants German and Manter, and upon an assign-

ment by Robert Young, Jr., of the certificates of tax sales theretofore issued by Kansas City to defendant Edwards.

I.   Before going into the evidence or discussing other points, let us consider the contract on which this suit is based.   Defendant interprets it to mean that if any defect in his title is discovered he shall have thirty days after being notified thereof in which to rectify the defect, if he sees fit to do so, but he has the election to rectify or not as he may see fit, and if he elects not to rectify it the contract thereby becomes null and void and the plaintiff may take down his earnest money and go.   On the other hand the plaintiff contends that that clause was for the purchaser's benefit, and if he was willing to take the title with the defect he had the right to do so.   The contract was written on a printed form which counsel say has long been in general use by the dealers in real estate in Kansas City. It is in the following words:

"This Contract Witnesseth, That Robert Young of the county of Cook, State of Illinois, has bargained and sold to W. H. Otto of the county of Jackson, State of Missouri, for six thousand dollars, the following described real estate in the county of Jackson, State of Missouri, to-wit:   Lots three and five in block four in Vineyards Addition in Kansas City, Jackson county, Missouri.

"Of the purchase price one hundred dollars has been paid and is deposited with the National Bank of Commerce at the request of Charles Johnson, agent of the seller, and the balance is payable as follows:

"Five thousand nine hundred dollars to be paid by the buyer to the seller upon the seller delivering to the buyer a good and sufficient warranty deed and the title to said property having been found to lie in the seller free and clear.

"The seller ............ agree ............ to furnish, within ten days from date hereof, at the office

of his agent making this sale, a complete abstract of title to the property, certified by competent abstracters from U. S. Government to this date including certificates in full, as to taxes, judgments or other liens.

"The buyer to have twenty days for the examination of the abstract and report to the seller any defects in the title: If the title is found to be defective, the seller agrees to have the same rectified within a reasonable time, which is not to exceed thirty days from the date of written notice of such defects; but in case such defects in the title be not remedied within that period, and no extension of time is had between the parties hereto, this contract shall be null and void, and the money deposited aforesaid shall be returned to the buyer, and the abstract to the seller.

"If, after such corrections (if any are required) as seller shall be able to make, it is found that the seller ha.... a good title in fee to the property he agree.... upon receipt of the remainder of the full consideration as hereinbefore set forth, to deliver to the buyer, or order, a good and sufficient deed thereto, duly executed, conveying good title to the property, free and clear of all taxes and encumbrances whatsoever now thereon except city, state and county taxes for the year 1905 and all taxes thereafter.

"If upon such delivery of deed or tender thereof the buyer........fail........to comply herewith on ........part by paying or delivering as hereinbefore stipulated the remainder of the purchase prices or consideration, the money deposited as aforesaid shall be forfeited by the buyer; and upon such forfeiture, this contract may or may not be thereafter operative, at the option of the seller.

"Time is of the essence of this contract."

*a.* As first written it was signed Robert Young by his agent and by the plaintiff in person, but it was sent to Young in Chicago for his own signature and before signing it he erased the clause requiring him to fur-

.nish an abstract, so that clause is no part of the contract unless it may be used to give meaning to the sentence immediately following: "The buyer to have twenty days for the examination of the abstract and report to the seller any defects in the title." Those words assume that an abstract is to be procured and the purchaser is to have twenty days in which to examine it. The twenty days are not given in which to procure the abstract and examine it, but "for the examination of the abstract and report to the seller." Since the seller erased the clause requiring him to fur-- nish an abstract the contract is left without any express provision as to who is to furnish it; it is simply silent on that subject, yet the next clause calls for an abstract and at the conclusion of the paragraph treating of the event in which the contract is to become null and void, it says: "the money deposited aforesaid shall be returned to the buyer and the abstract to the seller." The word "returned" in that connection means that the thing is to be given back to him who gave it, the earnest money to the buyer and the abstract to the seller; the only inference that can be drawn from those words is that the seller was to furnish the abstract. He may have intended to imply, by erasing the clause expressly requiring. him to furnish an abstract, that he was not to furnish one, but whilst the erasure left no express obligation on him to do so, it put no such obligation on the purchaser; it left it to inference who was to furnish the abstract and at the conclusion it expressly said the abstract was to be returned to the seller. If the purchaser had procured it at his own expense why should it be "returned" to the seller? If the defendant had intended to erase all in the printed form that looked to the furnishing of an abstract by .him, he did not erase enough. But assuming that the obligation to furnish the abstract devolved on the purchaser, then, as no time is limited in which to procure it the law would say it must be procured within

a reasonable time and the twenty days for examination will begin to run after that time.  Defendant does not plead that plaintiff did not procure the abstract within a reasonable time, but he pleads that plaintiff did not notify him of the defects within twenty days from the date of the contract. The contract did not require him to do so.  But that is not a very important point, because as we view the evidence, which will be hereinafter discussed, the defendant waived the point of twenty days' limit if it had been an available defense for him.

b.  The more serious point of controversy is as to the interpretation of the words following those last above quoted:  "If the title is found to be defective the seller agrees to have the same rectified within a reasonable time, which is not to exceed thirty days from the date of written notice of such defects; but in case such defects in the title be not remedied within that period, and no extension of time is had between the parties hereto, this contract shall be null and void and the money deposited aforesaid shall be returned to the buyer and the abstract to the seller."  The language is unequivocal that "the seller agrees to have the same rectified within a reasonable time;" how then can he say that it is optional with him to rectify it or not and if he elects not to do it the trade is off and the purchaser takes nothing but his earnest money?  And the language is: "in case such defects in the title be not remedied within that period, and no extension of time is had between the parties this contract shall be null," etc., that is to say, if the seller should fail to do what he agreed to do within a certain period and he will not agree that the purchaser may give him further time, then the purchaser is to forfeit all his rights. Of course if the defect in the title was such that the seller could not remedy it and the purchaser was not willing to waive the defect, he could not demand specific performance but would have only his action at law for

damages, for a court of equity would not decree that the seller should do what he could not do; but the language in this contract is not if the seller cannot remedy the defects, but it is "in case such defects in the title be not remedied," and the defendant says that means if he does not choose to remedy it he is under no obligation to do so and may declare the contract void. Defendant in his answer says it is a "purely optional contract." It is not even an optional contract as such term is understood in common parlance; it is no contract at all if the defendant's interpretation of it is correct, it is merely a nude promise to convey the land to the purchaser if he sees fit to do so after the purchaser has had time at his own expense to satisfy himself as to the title. If that interpretation of this contract is correct, a man well knowing that his title has a serious defect, but one which he can remove at any time if he chooses so to do, enters into a contract like this; the purchaser puts up his earnest money and obligates himself to pay the balance of the purchase money when a sufficient deed is tendered conveying a clear title; on examination he discovers a serious defect in the title and calls the seller's attention to it; the seller choosing then to consummate the sale, at once removes the defect and tenders a deed to the purchaser; should the purchaser refuse, he is liable not only to forfeit the earnest money but is liable also in damages for a breach of the contract. But how is it on the other side? If in the meantime the seller has discovered that he can get a better price from another person, he may elect not to remove the defect and may elect not to allow the purchaser to give him time to remove it and may elect to declare the contract null and void, and so the purchaser must be content to get back his earnest money and lose the benefit of his bargain. It would be a contract binding on the purchaser but not binding on the seller, the purchaser bound to buy or respond in damages, the seller not bound to do

anything that he does not wish to do. We cannot endorse either the reason or the justice of that interpretation. The facts of this case illustrate the soundness of what we have first said, here we have a seller who not only could remove the defects, but as we shall presently see did remove them, and yet refused to complete the sale, saying that the contract simply left the matter to be disposed of as he might elect. In his brief he says he entered into the contract knowing that he had no title to the land, but believing that for the price offered he could get a deed from his mother and sister. If his interpretation of the contract is correct then it was simply a trap for the plaintiff. We hold that that clause of the contract which says that if the defects are not removed the contract is to become void, is for the protection of the purchaser; he is not bound to accept the deed and pay the money unless the title is good, and yet if he chooses to waive the defect and take the title *cum onere* he may do so.

The Supreme Court of Illinois, passing judgment on a contract substantially like this, in Hunt v. Smith, 139 Ill. 296, said: "It is claimed by the appellants that, by reason of the inability of Hunt to convey an unincumbered title, the contract, by its own terms, became inoperative, and therefore no longer binding on either party; and the evidence tends to show that Hunt, acting upon that theory, undertook to declare the contract forfeited. . . . . It is plain that the construction thus sought to be put upon the contract was entirely unwarranted. The contract is an absolute undertaking by Hunt to sell and by Smith to purchase said lots upon the terms stated; Hunt, on his part, to convey a good title. True, a provision is added that, in case the title, upon examination, should be found materially defective, then, unless such defects should be cured within sixty days after written notice thereof, the earnest money should be refunded and the contract should become inoperative. This clearly was a pro-

vision inserted for the sole benefit of the purchaser, and one of which he alone could take advantage. It provided for the consequences of a failure of performance by the vendor, and, in the nature of things, could have been intended only to confer upon the purchaser the right to treat the contract as inoperative. It would be absurd to suppose that the parties intended to make a breach by the vendor of his own undertaking a ground upon which he would have a right to declare the contract void. Such a construction would, in effect, make the performance of the contract a matter dependent upon the mere will or caprice of the vendor, as it would always be within his power, if he should see fit to do so, to tender to the purchaser an imperfect title, and thus avail himself of his option to rescind." That expresses the law and the justice of the case.

Appellants refer to Terte v. Maynard, 48 Mo. App. 463, which they think announces a contrary doctrine, but we do not so understand it. The difference between that case and this is that there the seller contracted to sell only on condition that his title should be found to be good; the language of the contract was: "If, upon examination, it is found that the seller has a good title in fee to said property, he agrees to execute and deliver to the buyer or order a general warranty deed thereto." But in the case at bar the contract says: "This contract witnesseth, that Robert Young of the county of Cook, State of Illinois, has bargained and sold to W. H. Otto of the county of Jackson, State of Missouri, for six thousand dollars the following described real estate," etc., and further down it says if defects are discovered he agrees to have them rectified. In a subsequent clause in the contract in the case of Terte v. Maynard above referred to there was a stipulation as to the contract becoming null and void similar in some respects to the contract in the case at bar, but that clause was interpreted in the light of the preceding clause therein above quoted, as it should

have been, and it differed from the similar clause in this contract in this, that it released the seller from his obligation to sell only on the ground that "such defect in the title cannot be cured or remedied within that period." But in the case at bar according to appellants' contention the seller is released from his obligation to sell if he elects not to rectify the defect. In the other case our Kansas City Court of Appeals said: "It will be noticed by observing the contract that there is no distinct and independent agreement to convey. His agreement to make a warranty deed is conditioned on there being a good title. But the contract does not even here cease to speak; it further provides that if there turns out to be a defective title which cannot be rectified in thirty days, 'the contract is to be null and void.' . . . It is held that such provisions in contracts are for the benefit of the buyer who may or may not insist upon them. This is true, generally, and we do not wish to be misunderstood as saying that the vendor can, under all circumstances, excuse himself, for if the vendee should be willing to accept the title and relieve the vendor of his warranty as to the defect, the vendor should make the conveyance as provided, with the exception as to the defect which his vendee waives."

In Hartzell v. Crumb, 90 Mo. 629, which is also relied on by appellants, the language of the court on which appellants rely was used in the discussion of the question of whether or not the good faith of the vendor should be taken into account in estimating the vendee's damages where the contract failed for defect of title. The court, in that connection, said: "There is no good reason why one who undertakes to sell real property by a specified form of deed should not abide the terms of his contract. He can readily contract against any unexpected, real or supposed defect in the title. So long as the vendee is willing to accept the deed bargained for, the vendor ought not to be re-

lieved from paying an adequate compensation for breach of the contract. The supposed or real defect in the title, and the question of good faith or want of good faith, should not be considered.'' In that case there was simply a contract to sell, with no condition as to what should be the consequence if a defect should be discovered in the title.

We are also referred to Ryan v. Dunlap, 111 Mo. 610. In that case the contract was for the sale of certain city lots, and in due time the seller tendered a deed but the purchaser refused it because it was discovered that the lots had been diminished in size by the opening of a street and were only 140 feet deep, whereas the contract called for lots 150 feet deep. The contract was that if the title should ''prove defective beyond repair in a reasonable time,'' the contract was to be void and the earnest money returned to purchaser. The seller insisted that the refusal of the purchaser to accept the deed tendered and refusal to pay the balance of the purchase money amounted to a breach of the contract by the purchaser, and therefore the seller was entitled to retain the earnest money as his damages. There was a question of fact in the case as to whether either party was willing to an estimation of the diminution to be made in the purchase money on account of the diminution in the size of the lots, and this court held that unless the purchaser was willing to waive the defect of the shortage of the lots, the defect being one that could not be remedied, the purchaser was not entitled to a decree for a specific performance, but it also held that the defendant was not entitled to retain the earnest money, so the judgment went for the purchaser for the earnest money and interest. That is all that was decided in that case.

Our attention is also drawn to McLaughlin v. McAllister, 36 Fed. 745. That was not a case of sale but of exchange of properties in which it was specified that each party was to furnish the other abstracts showing

a perfect title, and it was expressly stipulated that "if either party cannot furnish abstracts this contract is void." The petition failed to state that the defendant could furnish an abstract and for that alleged defect the court sustained a demurrer to the petition with leave to amend. In their brief counsel for respondent follow that case through its further stages after an amended petition was filed, but we do not feel justified in looking into it further than appears in the volume of Reports. It is sufficient for our present research to say that the court was there dealing with a petition that showed on its face that the contract was to be void if either party was unable to furnish an abstract showing good title, and it did not aver that the defendant could do so. But in the case at bar the petition alleges not only that the defendant was able to clear the title, but that in fact he had done so, and the defendant is answering, not that he could not, but that he would not clear the title. There are other features of that case which distinguish it from this, but we have said enough. In what we have said in our discussion of those cases we have not intended to say or imply that if the defect in the title of defendant in this case had been such that he could not remedy he would have had the right to declare the contract rescinded and have escaped all liability. That clause was for the benefit of the buyer, not of the seller. The buyer could have refused to complete the purchase if there was an incurable defect, but he could have waived it if he had seen fit and have been entitled to a specific performance with that exception.

There are other cases referred to by appellants, but we do not think they sustain their interpretation of the contract, and we do not deem it worth while to review the cases any further.

II. There is no dispute about the important facts in the case. The contract bears date September 12, 1904. The plaintiff, assuming that it was his duty to procure the abstract of title, did so and submitted it to his attorney, who discovered certain defects in the title and gave a written opinion pointing them out. That opinion was sent to the defendant Robert Young, Jr., on October 27th, and the receipt of it was acknowledged October 30th, saying that he was taking action to comply with the requirements of the attorney to complete the title. Other letter correspondence between the parties ensued, and on November 6th defendant wrote: "All requirements can be met without delay." Defendant came to Kansas City in December by appointment with the purpose of closing the transactions, and the parties met at the office of the attorney for the plaintiff where they discussed the defects that had been found by the attorney and defendant was ready to comply with all requirements of the plaintiff's attorney except such as the plaintiff waived and except the matter of the special tax for park and boulevard purposes, as to which they did not agree, the plaintiff insisting that it was an incumbrance on the land at the date of the contract, defendant insisting contra. The conference was held in the forenoon and the parties parted at noon with this disputed item unsettled; the plaintiff testified that they parted with the agreement to meet again at 2 p. m. and renew the negotiations, the defendant testified that there was no agreement to meet again, but that the parting was with the understanding that the negotiations were ended, therefore he did not return to the meeting in the afternoon.

The parties did not meet again in person, but there was some correspondence by mail between them. In his letter to plaintiff of November 6, 1904, the defendant said: "Replying to your favor of the 2d I am experiencing some difficulty in running down the holder

of the tax deed issued to Geo. Hewitt, but am hurrying
the matter as fast as possible. All of the require-
ments can be met without delay.''

To that letter the plaintiff on November 9th re-
plied: ''I am in receipt of your favor of the 6th, and
note that you are experiencing some difficulty in run-
ning down the holder of the tax deeds, and fully ap-
preciate the fact that it will take some time for you
to clear this matter up, as well as some of the other
requirements of my attorney. Thanking you for your
efforts in that direction, I beg to remain.''

On June 6, 1905, plaintiff wrote defendant refer-
ring to former letters in which plaintiff complained
of the ''unfair and unusual'' delay the defendant was
causing in closing the matter, and informing him that
unless he telegraphed by the 8th of June that he had
forwarded the deed according to the contract the plain-
tiff would institute suit for a specific performance, to
which letter defendant replied by mail on June 8th as
follows:

''Dear Sir: I have your favor of the 6th in refer-
ence to Lot 3 and 5, Blk. 4, Vineyard's, in which you
say you will bring suit. I consider you have lost your
rights in this contract by refusing to close the trans-
action when I was in your city last December.

''I am leaving the city Sunday the 10th inst., and
should reach K. C. about the 26th inst., and will call.

''If you are in earnest in your favor of the 6th
why it's up to you to institute your proceedings. As
far as we are concerned I consider the matter closed.''

This suit was filed the next day, June 9, 1905.

The above is substantially the evidence bearing on
the defendant's plea that the plaintiff having failed
to notify him of the defects in twenty days after the
date of the contract, the contract became null and
void. In discussing the contract in paragraph one we
have already shown that the twenty days mentioned
did not begin to run from the date of the contract, but

even if it did the evidence above stated shows that defendant waived the time limit and continued negotiations with a view to consummating the sale until long after the lapse of that period. It was not until June 8, 1905, that defendant gave any intimation of his idea that plaintiff had forfeited his rights under the contract, and even then he does not base it on a failure to comply with the twenty days' limit but on what he calls the plaintiff's refusal to close the transaction at their meeting in December. Besides, in his answer in the damage suit, which was made a part of the pleadings in this case, defendant states that the defects were of such a character that some of them could not be rectified in thirty days, "that he made diligent efforts to comply with his contract, but said requirements being such that he could not rectify them within thirty days he elected to declare the contract null and void and so notified the plaintiff." But the evidence shows that he never notified the plaintiff that he elected to declare the contract void for that reason, but it was not until June following that he undertook to dispute the binding effect of the contract, and then not for the reason stated in his answer but because plaintiff did not close the transaction in December when they met in the lawyer's office. In his brief defendant says that the plaintiff does not plead a waiver of the time limit in which he was to notify defendant of the defects, but he is mistaken in that, and perhaps excusably so, because of the confusing jumble in their pleadings caused by transporting into this case, as far as applicable, the pleadings in the damage suit. In paragraph 5 of the plaintiff's reply to defendant's crossbill, on pages 21 and 22, the facts constituting the waiver are stated, and then it says that the defendant "did not elect to cancel the contract nor rescind the same on account of any delay in receiving such requirements, but did elect to waive any delay that may

have been occasioned in receipt of such requirements, and did elect to comply with such requirements."

III.    The evidence shows that at the date of the contract the defendant had no title to the land he contracted to sell. It had belonged to his father in his lifetime and it had passed under his will to his widow and daughter, Kate and Nannie Young, subject to a legacy to each of his two sons, William and Robert Young. The estate had been fully administered in Douglas county, Kansas, where the testator lived up to the time of his death; the legacies had been paid and the title to the land vested in the widow and daughter; the testimony also showed that there were no outstanding debts against the estate. In order to enable him to carry out this contract, the defendant, when these defects in his title were brought to his notice on October 27, 1904, obtained from his mother and sister, and his brother William, deeds conveying this land. Those deeds were either direct to the plaintiff, or the name of the grantee was left blank to be filled in by the defendant to anyone as the plaintiff might direct. There were also several other defects of less importance pointed out, all of which the defendant had mastered when the parties met in December, except an outstanding tax title to a very small part of the land standing in the name of one Hewitt, who was then dead, and it was impossible then, apparently, to communicate with his heirs, but that point the plaintiff waived. On the trial, besides the testimony on the part of the plaintiff to the same effect, the defendant testified that to enable him to perfect the title and complete the sale, he had procured a deed or deeds from his mother, his sister and his brother and brother's wife, and deeds from all other parties who held claims. The following is from his testimony: "By the Court: Mr. Young, you are pretty nearly in a position to specifically perform this contract, aren't you, if you want to? That

is, you have all the important deeds, you have the deed
from Mr. Manter, and the deed from Mr. German, and
there is nothing very important that might be re-
quired that you have not? A. Nothing that I could
not procure, sir. The only thing I have not, really, to
pass title, is the affidavit of Mr. Bernheimer, and quit-
claim. By Mr. Krauthoff (counsel for the purchaser):
Well, we will waive the Hewitt matter, if Your Honor
please. Q. And really, all that is between you, so far
as appears, now, is the matter of these park taxes?
A. Well, there was a matter of Mr. Hatfield's $25, in
paying for the abstract; yes, sir. By Mr. Krauthoff:
We don't claim that. A. (Continuing.) I stood ready
and willing, at the time I visited Mr. Hatfield, in Mr.
Hatfield's office, to comply with my portion of the con-
tract, providing— By the Court: Well, this is whit-
tled right down, then, to these park taxes. That is
what it amounts to. That is, provided there is a con-
tract here, binding on you. I am discussing, now,
simply this question of whether you are able to per-
form. A. (Continuing.) Yes; and the question of
the abstract. By Mr. Krauthoff: We don't insist on
any charges for Mr. Hatfield, and don't insist on any
charges for any abstract. A. (Continuing.) But, if
Your Honor please, they did, at that time. By the
Court: But I mean, if this is a binding contract on
you and your family, you are able to perform it, right
now? A. Yes, sir.''

The testimony shows that at the conference in
December and also at the time of the trial the defend-
ant was perfectly able to perform the contract, but was
unwilling to do so. As to the special tax assessment
for park and boulevard it was a lien on the land in
the month of June next preceding the date of the con-
tract, and although not then payable was an incum-
brance which it was the duty of defendant to remove
and he had the ability to do so. Under those circum-

stances the chancellor could not have done otherwise than decree as to Robert Young, Jr., a specific performance of the contract.

IV. Appellants say, however, that as to the other members of the Young family the court had no authority to decree a specific performance because they were not parties to the contract sued on. That is correct, they could not be required to specifically perform a contract to which they were not parties. But whilst they were not parties to the contract, yet it was made by Robert with the purpose of selling their land to the plaintiff and when they were informed of it they at once ratified it by making a deed or deeds conveying the land to plaintiff, or to whom he might name, and delivered them to Robert to enable him to make specific performance of the contract. In their brief defendants, referring to the date of the contract, say: "Robert knew at that time that he did not own the property, but he was confident that for the price named and within the time named he could procure a deed from Kate and Nannie Young." That would seem to imply that Robert was assuming to act as agent for his mother and sister for the sale of the land, and what follows in their brief indicates that when informed of the contract they ratified it; the brief continues: "In the very best of faith, Young procured deeds from Nannie Young and Kate Young, and from William Young for Otto, and offered to turn them over with a deed from himself to Otto. He also procured quitclaim deeds from several other parties and offered to turn them over to Otto. These deeds were not made to Robert Young and it was nowhere claimed that he had purchased the property, or that he owned the property. They were made to be delivered to Mr. Otto in order to comply with the contract which Young had made with him. Kate Young and Nannie Young were under no obligations to Otto

whatever, nor does it appear that they were under any obligations to Robert Young.''

In reference to the deed or deeds Robert testified: ''Q. And your brother and his wife and your mother and sister and yourself all joined in deeds whether there was one deed or two deeds? A. They joined in signing, yes, sir. Q. And you think those deeds were to W. H. Otto? A. Well, as I have stated, I am not clear on the subject, sir. Q. And they were made under this contract you had with Mr. Otto, were they not? A. With a view to fulfilling that, yes, sir. Q. You explained to your mother and sister and brother about it? A. Yes, sir.''

If we view it as a contract made by an unauthorized agent for their benefit then it became their own contract by ratification; if we view it as having been made by Robert under the impression that the land was his, then the parties sought to enable him to fulfill it by conveying the title to him or to the plaintiff for that purpose; in either case they had participated so far in the transaction as to enable the defendant Robert to make specific performance. In their brief defendants, referring to the deed or deeds executed by the other members of the Young family and delivered to Robert to enable him to carry out the contract, say: ''Suppose they did approve it at that time; their approval was without any consideration and as such subject to instant withdrawal. They did withdraw it and absolutely refused to comply with its terms, and at the trial refused and are now refusing.'' The evidence does not sustain the allegation that they withdrew their approval, even if it should be conceded, which it is not, that after executing the deed and delivering it to Robert to be delivered to the plaintiff, they could withdraw it. On the contrary at the trial Robert testified that he still had the deeds and could carry out his contract if he saw fit to do so, but elected to consider that he would not.

Although the finding of the court, as expressed in the decree, is that the plaintiff is entitled to a specific performance not only as against Robert but also as against Kate, Nannie and William, yet the decree does not undertake to require them to do anything towards making specific performance; it accomplishes its purpose by decreeing that their title be vested in the plaintiff and that a copy of the decree be recorded in the office of the recorder of deeds. That form of a decree for specific performance is in conformity to our practice. The ancient chancery practice was to require the defendant, under the penalty of incurring the displeasure of the court and pains attending thereon, to execute the deed, but our statute, section 785, Revised Statutes 1899, accomplishes the same end by passing the title by decree, and section 3743 authorizes the decree to be recorded like a deed. Whilst the plaintiff might have maintained a suit for the specific performance of this contract against Robert Young alone, yet a decree against him alone would not have put an end to the controversy as to the title; plaintiff would then have had to institute a suit against the other parties to test the validity of the deeds they were said to have executed. Equity favors settling in one suit all the controversy if it can be done. There was sufficient unity of interests of these parties to justify the joining of them in one suit. In this suit they had an opportunity, if they had seen fit to do so, to have disputed the deeds said to have been executed by them, or disputed the purpose for which they were said to have been executed, or their validity, but they made no such defense, presumably because they had none. We hold that they were proper parties to this suit and the decree is binding on them.

V. Appellants criticise the petition because it does not tender into court the balance of the purchase

money, $5900, to the defendant Rogert Young, but tenders it for the benefit of "whom it may concern." When a plaintiff states his facts to the court and puts his money in the hands of the court to be paid to whom the court shall adjudge under the facts entitled to it, it amounts to the same thing as if he had himself divined before final judgment who was entitled to it and had tendered the money into court for him. Under our system of pleading it is sufficient if he states the facts and leaves the court to find the law. The presumption is that the court is going to decide the law correctly and give to every one his dues. As to who of the Youngs will take the money the decree seems to leave it to them to settle between themselves and we do not discover any complaint of the decree on that account. The evidence shows that Robert Young has in his possession all the deeds that the decree calls for, and he has only to deliver them, with his own deed, to the plaintiff or to the court for him and receive the money. There is no controversy between him and his mother and sister as to whom the money is due, his brother William has no interest in the land and is asserting no claim to the money.

VI. Appellants complain of the petition for specifying certain things to be done which are either impossible or which cannot be done within the thirty days mentioned in the contract; among them is the probating of the will of Robert Young, Sr., and taking out letters of administration on his estate in Jackson county, to make which effectual to clear the land from any possible creditor would require two years. Appellants are not hurt by those demands in the petition, because none of them is required by the decree; it is of the decree only that appellants have any right to complain. The plaintiff does not in his petition make his tender of the purchase money conditional on the performance of those requirements, and he is not

now complaining that the decree gives the money to the defendants without requiring those things to be done. The decree to that extent is in favor of the defendants, and if it is not right in that respect they have no cause to complain.

VII. It is also insisted that the filing of the suit for damages was a waiver of the right to sue for a specific performance. Plaintiff of course could not have damages for a breach of the contract and specific performance of it also, but he had a right of election between the two remedies. Defendant Robert Young in his answer pleads the fact that the suit for damages had been substituted while the suit for specific performance was pending and said: "the plaintiff ought not to be allowed to proceed in both causes of action but should be required by the court to elect upon which cause of action he desires to stand." When the causes came on for trial, as we have already noted, they were, by agreement of parties and order of court, consolidated to be tried together, but when the trial began the plaintiff dismissed his suit for damages, and elected to stand on his suit for specific performance, thus doing voluntarily exactly what defendants insisted the court should require him to do. Now the defendants in their brief contend that the filing of the suit for damages made a condition not merely for election but a virtual abandonment of the equity suit. The defendants were right in their first conception of the law, that is, the plaintiff should be put to his election, but the mere institution of the suit for damages which was dismissed before judgment did not bar the suit for specific performance. In Johnson-Brinkman Com. Co. v. Mo. Pac. Ry. Co., 126 Mo. 344, it was held that the bringing of an attachment suit which was dismissed before judgment did not bar a suit in replevin arising out of the same transaction.

The doctrine of that case was also approved in Tower v. Compton Hill Imp. Co., 192 Mo. 379.

Other points are discussed in the briefs, but we find nothing in them that would justify a further consumption of time and space.

The judgment is affirmed. All concur, except that *Woodson, J.,* takes no part in the decision.