LEONARD v. KING.

(Court of Civil Appeals of Texas. Dec. 3, 1910. Rehearing Denied March 25, 1911.)

1. SPECIFIC PERFORMANCE (§ 109*)—RECEIVER—PRESERVATION OF.PROPERTY AND RENTS PENDING LITIGATION.

Defendant and plaintiff's assignor entered into a contract for the sale and purchase of land with a building thereon for a consideration of $100,000, and defendant's warranty deed of the land and plaintiff's deed of trust to secure the vendor's lien and his check and his several notes, the last of which matured in six years, were placed with a bank in escrow, to be delivered when defendant's title was settled; and while

the title was being settled defendant notified the bank that he did not intend to carry out the contract of sale, and thereafter plaintiff accepted the title, tendered performance, and requested the bank to deliver the defendant's deed, which it refused to do. In an action by the plaintiff for specific performance, it appeared that plaintiff was unable to obtain insurance on the building, and that policies held by him were invalid, and also that the defendant was collecting the rent and appropriating it to his own use. *Held*, that the court was warranted in appointing a receiver.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 353½; Dec. Dig. § 109.*]

2. SPECIFIC PERFORMANCE (§ 59*)—CONTRACTS ENFORCEABLE—CONDITIONS.

A contract between vendor and purchaser provided that: "Seller is to furnish purchaser an authentic abstract showing good title in seller to the property to be conveyed. Should said abstract not show good title in seller, seller is to have a reasonable time * * * in which to perfect said title. Should seller not be able to perfect said title within said time, then this contract is to be void," and the deeds, check, and notes placed in escrow by the parties were to be delivered upon "approval of the title." Time for perfecting title was twice extended, and while the vendor had not shown a perfect record title the purchaser was ready to accept the title, and made tender of performance and requested the delivery of the vendor's deed, but the vendor refused to perform. *Held*, that the provision declaring the contract to be void, was for the benefit of the purchaser, not of the vendor, and that the vendor was obliged to perform.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.*]

3. EVIDENCE (§ 215*) — ADMISSIBILITY — DECLARATIONS AND ADMISSIONS.

In an action by a purchaser for specific performance by the vendor, the vendor's signed statement though not sworn to, is admissible as evidence of his declarations and admissions, since if any part of the statement was incorrect, the vendor could have so testified.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 754–759; Dec. Dig. § 215.*]

4. EVIDENCE (§ 471*)—INTENTION OF WITNESS.

A purchaser, in an action for specific performance by the vendor was asked, "And failing to do that—that is, to clear the title to the property—you would try to abate the purchase money that you had to pay? * * *" *Held*, that the purchaser's answer to the question was inadmissible, since his intention as to what he would do in the future was immaterial to the merits of the case.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2157; Dec. Dig. § 471.*]

5. APPEAL AND ERROR (§ 1054*)—HARMLESS ERROR—ERROR NOT AFFECTING RESULT.

The erroneous admission of testimony of the vendor's attorney, in an action by a purchaser for specific performance, will be held harmless on an appeal from an interlocutory order appointing a receiver in the suit.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1054.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by S. W. King, Jr., against M. L. Leonard. From an interlocutory order appointing a receiver, the defendant appeals. Affirmed.

N. G. Turney and Crawford, Muse & Allen, for appellant. Dabney & Townsend, for appellee.

RAINEY, C. J. This is an appeal from an interlocutory order appointing a receiver in a suit by S. W. King, Jr., against Mrs. M. L. Leonard, to enforce specific performance of a contract of sale of a certain lot in the town of Dallas, Tex.

Evidence was heard by the court and its findings of fact are substantially correct, which are as follows:

"I find that on November 12, 1909, the defendant, Mrs. M. L. Leonard, a single woman, entered into a written contract with one J. S. Kendall, as follows:

"'The State of Texas, County of Dallas.

"'This contract made and entered into this 12th day of November, 1909, by and between Mrs. M. L. Leonard, hereinafter styled seller (acting herein by herself) and J. S. Kendall, hereinafter styled purchaser, witnesseth: Seller hereby sell to purchaser and purchaser hereby purchase from seller for the price of one hundred thousand ($100,000.00) dollars, and upon the terms and conditions hereinafter set out, the following described property, to wit: In the city and county of Dallas, state of Texas, being the two-story building and 50 by 100 feet on which it is situate, at the southeast corner of Ervay and Commerce streets, fronting 50 feet on the south line of Commerce street and 100 feet on the east line of Ervay street:

"'(1) Said purchase price is payable as follows: One thousand dollars paid by purchaser upon the execution of this contract, the receipt of which is hereby acknowledged; twenty-four thousand ($24,000.00) dollars to be paid by purchaser upon the execution and delivery of a general warranty deed to said premises, and the remainder of said purchase price to be paid according to the following terms: In six notes, five in the sum of $5,000.00 each, due one, two, three, four and five years after date of deed, and one in the sum of $50,000.00, due six years after date of deed; said notes bearing interest at the rate of six per cent. per annum, interest payable semiannually. (Executed in duplicate; one copy to purchaser, one copy and deposit of $1,000.00 left with J. W. Thompson, according to terms of this contract. Such deferred payments to be evidenced by vendor's lien and notes executed by purchaser and secured by a vendor's lien expressly retained in said deed and by a deed of trust containing power of sale together with the usual covenants as to default, taxes, insurance, etc. upon said property.)

"'(2) Seller is to furnish purchaser an authentic abstract showing good title in seller to the property to be conveyed. Should said abstract not show good title in seller, seller

is to have a reasonable time (not to exceed thirty days) in which to perfect said title. Should seller not be able to perfect said title within said time, then this contract is to be void and the purchase money paid at the time of the execution of this contract to be returned to purchaser. ($2,500.00 commission to be paid by seller to Hann & Kendall upon completion of this sale.)

" '(3) Purchaser agrees that should abstract show good title in the seller, purchaser shall within thirty days from delivery of said abstract pay the balance of the cash payment and execute the notes for the deferred payments and the deed of trust hereinabove provided for to secure the deferred payments, at which time seller shall deliver to purchaser a general warranty deed conveying to purchaser the said property in fee simple. Taxes for the year 1909 to be paid by seller.

" 'Witness our hands in duplicate this 12th day of November, A. D. 1909.

" '[Signed] M. L. Leonard, Seller.
" 'J. S. Kendall, Purchaser.'

"That at the time of the execution of said contract, the said Kendall paid to J. W. Thompson, who was Mrs. Leonard's attorney, the said sum of $1,000 in cash, mentioned in said contract; that after said contract was executed and on the same date, said J. S. Kendall, in consideration of $1,000 paid to him by the plaintiff, S. W. King, Jr., transferred and assigned the said contract to said King, by the following indorsement written upon the back of said contract:

" '11–12–09. Received of S. W. King, Jr., the sum of $1,000 and the within contract is hereby transferred to him. [Signed] J. S. Kendall.

" 'Accepted: [Signed] S. W. King, Jr.'

"I find that on November 13, 1909, Mrs. Leonard, duly executed and acknowledged a general warranty deed by its terms conveying to the said S. W. King, Jr., the property described in said contract, the said deed, reciting that it was executed in consideration of the sum of $100,000, payable as follows: $25,000 cash, the receipt of which is hereby acknowledged, and six notes, five for the sum of $5,000 each, due one, two, three, four, and five years after date, and one for the sum of $50,000 due six years after date; said notes bearing interest at the rate of 6 per cent. per annum, payable semiannually. Said deed expressed the same consideration and terms as set forth in said contract. That on the same date, to wit, November 1, 1909, the said S. W. King, Jr., executed his six promissory vendor's lien notes, as described in said deed, payable to the order of Mrs. M. L. Leonard, and executed and acknowledged a deed of trust upon the aforesaid property, to secure said notes, and containing power of sale, together with the usual covenants as to taxes, insurance, etc. That on November 13th, Mrs. Leonard deposited said deed with the American Exchange National Bank, and said King deposited said notes and deed of trust with said bank and also turned over to said bank his check for $24,000, payable to the order of said bank. That at the same time the said papers and check were deposited with said bank the said Mrs. Leonard and S. W. King, Jr., signed and delivered to said bank a letter addressed to said bank, as follows:

" 'November 13, 1909. American Exchange Natl. Bank, City. Gentlemen: We herewith hand you deed from M. L. Leonard, a feme sole, to S. W. King, Jr., conveying 50x100 feet at the southeast corner of Commerce and Ervay streets, known as lot 4 in block 136 of Smith, Murphy & Martin's addition to the city of Dallas, Texas, for a consideration of $100,000 payable as follows: $25,000 in cash and six notes, five for the sum of $5,000 each and one for the sum of $50,000 due and payable one, two, three, four, five and six years, respectively, after date, all bearing interest at the rate of six per cent. per annum, payable semi-annually and secured by vendor's lien and deed of trust on said property. We also hand you herewith notes and deed of trust from S. W. King, Jr.; all of these papers—that is, deed, notes and deed of trust—are properly executed and acknowledged by the proper parties; we also hand you herewith S. W. King, Jr.'s, check for 24,000 payable to your order, being the balance of the cash payment to be made in this sale, Mrs. Leonard having $1,000 already as a deposit. It is understood that you are to hold deed, notes and deed of trust and check in escrow until abstract can be made and furnished Mr. King and until Mr. King can have the title examined by his attorneys, not to exceed time granted in hereafter mentioned contract. Upon the approval of the title to the above described property, you are to deliver to Mr. King the deed herewith and to Mrs. Leonard the notes and deed of trust herewith together with $24,000 in cash, and the contract entered into between Mrs. M. L. Leonard and J. S. Kendall and assigned by said Kendall to S. W. King, Jr., shall be carried out according to its terms and conditions. [Signed] Mrs. M. L. Leonard. S. W. King, Jr.

" 'You are hereby authorized to pay out of the cash received in the above transaction the sum of $2,500.00 to Hann & Kendall, as commission upon the consummation of the above transaction. [Signed] Mrs. M. L. Leonard.

" '11/13/09. Rec'd the papers above mentioned. Am. Ex. Ntl. Bank, by H. H. Smith, A. C.'

"(3) I further find that on December 11, 1909, the said Mrs. Leonard and S. W. King, Jr., executed the following agreement for the purpose of extending the time of the aforesaid contract: 'It having developed that more time will be required than was originally anticipated in clearing up Mrs. M. L. Leonard's title to the property mentioned in

her contract of sale to S. W. King, Jr., dated November 12, 1909, it is hereby agreed between said parties that Mrs. Leonard shall have an additional thirty days in which to perfect her title to said property, and that said contract shall remain in full force until January 12th, 1910. [Signed] Mrs. M. L. Leonard. S. W. King, Jr.' That on January 10, 1910, said Mrs. Leonard and S. W. King, Jr., executed the following agreement, further extending the time of said contract: 'Dallas, Texas, January 10, 1910. It having developed that more time will be required than was originally anticipated in clearing up Mrs. M. L. Leonard's title to the property mentioned in her contract of sale to S. W. King, Jr., dated November 12, 1909, it is hereby agreed between said parties that Mrs. Leonard shall have an additional thirty days from January 12th, 1910, the date of the expiration of a former extension of such contract, in which to perfect her title to said property, and that said contract shall remain in full force until February 12, 1910. [Signed] Mrs. M. L. Leonard. S. W. King, Jr.'

"(4) I further find that in November, 1909, the abstract of title to the said property was made and delivered to King's attorney for examination, and said attorney examined said abstract and after several conferences with Mrs. Leonard's attorneys, Thompson & Word, concluded that Mrs. Leonard had a good title to the said property, but that she did not have a good record title thereto. That it was the opinion of King's attorney and Mrs. Leonard's attorneys that, in order to make Mrs. Leonard's record title good, it was necessary to get a quitclaim deed from Mrs. Leonard's sister, Mrs. Anna Anderson, and her husband, John Anderson, but that such deed from the Andersons was not obtained.

"(5) I further find that some time prior to February 3, 1910, Mrs. Leonard instructed the American Exchange National Bank not to deliver her deed to King, and notified the bank that she did not intend to carry out the said sale of the property.

"(6) I find that on or about February 3, 1910, King, upon the advice of his attorney, concluded to accept Mrs. Leonard's title to the property as it was, and that he and his attorney, on February 3, 1910, stated to the American Exchange National Bank that they would accept said title and instructed the bank to turn over to Mrs. Leonard the notes and deed of trust above mentioned and the said sum of $24,000 deposited as aforesaid, and requested the bank to deliver to King Mrs. Leonard's said deed. That the bank, because of Mrs. Leonard's instructions to it not to turn over said deed, refused to deliver said deed to King, and that thereupon the said King instituted this suit.

"(7) I further find that Mrs. Leonard did have, on November 12, 1909, and now has, a good and marketable title to the said property, and that her title to said property was approved by King and by King's attorney on February 3, 1910.

"(8) I find that Mrs. Leonard has had and exercised continuous, exclusive, and active possession of said property for more than 30 years; that her said possession has been adverse to every person that could or might assert any claim to said property, or any interest therein; that during all of said time Mrs. Leonard has paid the taxes on said property; that no other person claims any right, title, or interest in said property, and that, if Mrs. Anna Anderson should assert any claim to said property, the testimony is and will be available to show that she never owned any interest in said property, and that she is barred by the statute of limitation.

"(9) I further find that on the said lot is situated a two-story brick building of the value of $10,000; that the plaintiff is unable to procure valid fire insurance on said property; that Mrs. Leonard has some fire insurance on said property, but that the insurance policies are invalid, and that, if said property should be destroyed by fire, it is very probable, if not certain, that no insurance could be collected thereon; that the said property is rented out for the sum of $350 per month, and that the rentals thereon are being collected by Mrs. Leonard and appropriated to her own use; that a receiver for said property could obtain valid fire insurance on said property for the adequate protection of the parties to this suit. I find that in order to protect and preserve the said property and the rents thereon it is necessary that the court appoint a receiver for the said property."

We are of the opinion that the evidence shows such a condition of affairs that the court was warranted in appointing a receiver.

The main contention of appellant is that clause No. 2 of the contract of sale, in reference to Mrs. Leonard not being able to furnish an authentic abstract showing a perfect title to said lot, renders the contract void, and no obligation on her part exists to convey said lot by warranty deed.

Said clause No. 2 reads: "Seller is to furnish purchaser an authentic abstract showing good title in seller to the property to be conveyed. Should said abstract not show good title in seller, seller is to have a reasonable time (not to exceed thirty days) in which to perfect said title. Should seller not be able to perfect said title within said time, then this contract is to be void and the purchase money paid at the time of the execution of this contract to be returned to purchaser. ($2,500.00 commission to be paid by seller to Hann & Kendall upon completion of this sale.)"

The appellee contends that said clause No. 2 was placed in the contract for the benefit of the purchaser, and that it does not inure to the benefit of the seller, Mrs. Leonard. Otto v. Young, 227 Mo. 193, 127 S. W. 9.

In the contract Mrs. Leonard is styled

"seller" and Kendall, with whom the contract was entered into, and who afterwards transferred it to the appellee, is styled "purchaser," and one clause therein reads: "Seller hereby sells to purchaser and purchaser hereby purchases from seller for the price of one hundred thousand ($100,000.00) dollars, and upon the terms and conditions hereinafter set out the following described property, to wit"—describing the property. The purchaser agreeing to purchase upon abstract showing good title in the seller, and pay the consideration in the manner stipulated in the contract, and then seller to make a warranty deed. If the abstract failed to·show a good title, the seller was allowed 30 days in which to perfect the title. Time for the perfecting of the title was twice extended, and at the termination of said second period Mrs. Leonard had not corrected the defect appearing upon the face of the abstract. Mrs. Leonard did not appear as a witness, and it does not appear from the evidence that she faithfully endeavored to clear the title of the defect.

While the contract provides for a good title, to be shown by the abstract, we think it contemplated that there should be a good title vested in Mrs. Leonard—such title as the purchaser was willing to accept—and that such clause was inserted in the contract for the benefit of the purchaser, and Mrs. Leonard cannot take advantage of it, as the purchaser is willing to accept her deed of conveyance; it being shown that Mrs. Leonard owns the lot, and her right to convey a good title cannot be successfully attacked.

All the necessary papers were executed and placed with the American Exchange National Bank, and written instructions signed by Mrs. Leonard and the appellee, King, given to the bank, which recited, among other things, that "upon the approval of the title to the above-described property, you are to deliver to Mr. King the deed herewith and to Mrs. Leonard the notes and deed of trust herewith, together with $24,000 in cash, and the contract entered into between Mrs. M. L. Leonard and J. S. Kendall and assigned by said Kendall to S. W. King, Jr., shall be carried out according to its tenor and conditions." Out of the cash so received the bank was to pay to Hann & Kendall $2,500 as commissions upon the consummation of the above contract. These instructions strengthen the construction that only such title as was acceptable to King was contemplated, and as King, before the time of extension had expired, had signified his willingness to accept the deed and close the contract as the title then stood, Mrs. Leonard is in no position to defeat the enforcement of performance of the contract.

The case of Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10, relied on by appellant to support her proposition, shows a different state of facts from the case at bar. There the contract for the sale of land provided: "And it is agreed that, if the title to said premises is not good and cannot be made good, this agreement shall be void and the above $50 refunded." In that case it was shown that the seller did not own a perfect title, subject to conveyance by him, and he could not make it good; hence it was held that the seller could take advantage of the terms of the contract. But here Mrs. Leonard owned the title in fee simple, and such record defects as were shown to exist could have been removed by legal proceedings, if necessary.

There was no error in permitting the signed statement of Mrs. Leonard, though not sworn to, to be introduced in evidence, as her declarations and admissions were legitimate. If any part of said statement was incorrect, she·could have so testified.

The court did not err in refusing to require King, plaintiff, to answer the following question: "And failing to do that—that is, to clear the title to the property—you would try to abate the purchase money that you had to pay Mrs. Leonard?" The intention of the witness as to what he would do in the future could not affect the merits of the case, and therefore the question was immaterial.

It was error to admit the testimony of the witness Word, as to the conversation had between him and Attorney Townsend, in relation to the statements of Mrs. Leonard and Attorney Turney, but this error does not affect the disposition of the question before the court. The unsigned written statement of N. G. Turney was not admissible, but this did not affect the question of the appointment of a receiver.

There are other errors assigned, but none require a reversal of this case.

The judgment is affirmed.